Mildred **FESSLER**, Plaintiff,

v.

David **MATTHEWS**, Secretary of Health, Education and Welfare, Defendant.

No. 72 CIV. 4738.

United States District Court, S. D. New York.

May 11, 1976.

Berman & Klein by Robert J. Berman, New York City, for plaintiff.

Robert B. Fiske, Jr., U. S. Atty. by William R. Bronner, Asst. U. S. Atty., New York City, for defendant.

## MEMORANDUM OPINION

MOTLEY, District Judge.

This is an action brought by Mildred Fessler pursuant to § 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), (the "Act") to review a final determination of the Secretary of Health, Education and Welfare (the "Secretary") denying her application for a period of disability benefits and disability insurance benefits under §§ 216(i) and 223 of the Act, respectively (42 U.S.C. §§ 416[i] and 423). This court concludes that, on the facts of this case, the

interests of justice are best served by a remand to the Secretary for a new hearing. Defendant's motion for judgment on the pleadings is, accordingly, denied.

Plaintiff filed an application for disability insurance benefits on October 27, 1970, alleging that she was unable to work because of a heart condition and an ulcer. The application was denied initially, the denial was affirmed, and was adhered to on reconsideration. Plaintiff requested a hearing, which was held on May 31, 1972. The administrative law judge before whom plaintiff appeared considered the case *de novo* and, on June 15, 1972, found that plaintiff was not under a "disability", as that term is defined in the Act. The administrative law judge's decision became the final decision of the Secretary when it was approved by the Appeals Council on August 1, 1972. Plaintiff then instituted this action tó review that determination.

The record reveals that plaintiff was born in Austria in 1906. She completed eight years of schooling and also completed a six month bookkeeping course. She is presently divorced and, for the last ten years, has lived alone in a three-room apartment in New York City.

Although the transcript is somewhat ambiguous, it appears that plaintiff worked as a bookkeeper from either 1941 or 1950 until March of 1969. In March of 1969, she applied for, and then received, Social Security Retirement Benefits in the amount of $164 per month, after deduction of $6 for her Medicare contribution. At the same time, she terminated her employment with Montgomery Associates,[1] as soon as that firm had found a permanent replacement to fill her position. She testified at the administrative hearing that the job had become intolerable for her, that she could not handle it anymore, that the work piled up, that she tended to fall asleep in the afternoon, and that she experienced pain in her chest and stomach when she tried to work. After she left Montgomery Associates, she report-

---

1. The hearing transcript indicates that her former employer was "Montgomery Associates." However, it appears from Exhibit 4 to defendant's memorandum of law that this may be a stenographic error, the proper name being Montauk Associates.

ed that she looked for another job, could not find anything suitable, and has been unemployed since 1969.

According to her testimony at the hearing, plaintiff indicated that, before February of 1972, she had done her own cooking, cleaning and shopping, but that, after that time, she had restricted her cleaning to very light activity. She continued to use public transportation if it did not entail climbing stairs, but she found it impossible to go outside for weeks at a time in the winter, due to the cold. During that time, her neighbors did her shopping for her.

The medical evidence before the administrative law judge consisted of plaintiff's testimony, certain medical reports, and his own visual observations. To the judge, plaintiff appeared to be healthy, exhibiting no external indicia of physical impairment. By contrast, plaintiff herself testified in general terms that she experienced pain in her chest and stomach, that her legs hurt, and that she found it difficult to climb stairs. She also testified that she had been under the care of Dr. Isadore Schalmowitz and, subsequently, Dr. Charles K. Friedberg, an internist whom she had seen most recently in February of 1972. She also testified that she was taking medication, including nitroglycerin.

The other medical evidence before the administrative law judge consisted of two medical reports prepared by Dr. Friedberg at the request of the agency, and the hospital record compiled during plaintiff's two-week hospitalization in April, 1971 for a myocardial infarction.

Dr. Friedberg's first report, dated October 27, 1970, disclosed the following: (1) the heart was normal in size and sound, there were no murmurs, and the EKG was normal with minor changes; (2) the lungs were clear and the chest X-ray was normal; (3) the urinalysis was negative. His "probable diagnosis" was "coronary heart disease with angina pectoris . . . based on history only."

In his second report, dated November 23, 1971, Dr. Friedberg stated that plaintiff had been under his care since September 23, 1970 due to chest pain diagnosed as angina pectoris beginning in June of 1970. He also noted that plaintiff had continued to have disabling angina which prevented her at times from speaking. The inability to speak tended, he felt, to intensify her symptoms and cause a tightness in her neck, throat, and upper chest until she stopped talking. It was Dr. Friedberg's view that "[b]ecause of these symptoms she has been disabled and unable to work and more specifically is unable to continue as a teacher since this requires continuous talking." (The latter statement apparently reflects a misunderstanding of plaintiff's occupation since, by her own testimony, plaintiff has worked exclusively at bookkeeping and clerical jobs since 1941.)

Dr. Friedberg also treated plaintiff during her hospitalization for an acute myocardial infarction at The Mount Sinai Hospital during April, 1971. A chest X-ray taken during that hospitalization showed that the lung fields were clear, that the heart was of normal size and configuration. EKG's taken at this time tended to indicate some abnormality, but they were read as being within normal limits.[2]

The administrative law judge evaluated the medical evidence as follows:

"The claimant has alleged inability to work since March 1969 due to a heart condition and ulcers. The Hearing Examiner however, is unable to find support in the evidence of record for the claim-

2. Dr. Herschel J. Sklaroff replaced Dr. Friedberg as plaintiff's physician after the latter's death. He apparently examined her for the first time in September of 1972. His report, dated March 26, 1973 and annexed as Exhibit 1 to defendant's memorandum of law, indicated that the previous diagnosis of acute myocardial infarction was "manifest by definite electrocardiographic and enzymatic changes," which he ascertained by reviewing the EKG's taken during the hospitalization period. Dr. Sklaroff's evaluation of another EKG, taken on January 23, 1973, was that the EKG, although not normal, "reveals *no definitive* evidence of myocardial infarction." (emphasis added). The administrative law judge found that the "EKG and X-ray findings fail to reveal significant cardiac pathology."

ant's allegation of disability. The medical evidence does not demonstrate the presence of any significant medically determinable heart disease. She has a diagnosis of heart disease by history only. The clinical and laboratory findings do not show any severe cardiovascular complications. A review of the EKG and X-ray findings fail [sic] to reveal significant cardiac pathology. Thusly while the claimant may be restricted from moderate or arduous physical efforts she retains sufficient residual cardiac ability for light or sedentary physical activity. The claimant's allegation of an ulcer finds no support in the record . . . The medical evidence fails to demonstrate that the claimant had cardiovascular involvement which prevented her engagement in vocational endeavor . . . The evidence does not demonstrate any other physical or mental impairments which would prevent work activity. . . . . "

In terms of vocational restriction, the judge found as follows:

"The total evidence of record fully shows that the claimant retains the residual capacity for light or sedentary activity on a sustained basis. As such she fully qualifies to do her regular work as a bookkeeper . . . The claimant's cardiovascular impairment has not prevented her from engaging in substantial gainful activity for a period of not less than 12 months . . . The claimant is physically capable of performing substantial gainful activity in her regular work activity . . . The claimant was not under a 'disability' as defined in the Act at any time prior to the issuance of this decision."

In her appeal from the decision of the administrative law judge to the Appeals Council, plaintiff apparently submitted no further evidence. However, in her written statement to the Appeals Council, she noted the following:

"At the hearing I did not describe all my physical discomforts believing that my physician's letter was sufficient. I did not mention a buzzing sound in my head, cramps in the middle of my chest thru to the back, the necessity to eat six times a day soft pureed food freshly prepaired [sic] because a hard piece of food such as unmashed potato chokes me. . . . "

After her appeal had been denied and subsequent to the commencement of this action, plaintiff submitted to the Appeals Council a report from Dr. Herschel J. Sklaroff, dated March 26, 1973, in which he concluded that plaintiff was then suffering from incapacitating heart disease. The Appeals Council considered this new evidence and concluded that Dr. Sklaroff's report was cumulative or duplicative of evidence already in the record and that further administrative proceedings would not be warranted.

In an action such as this to review a decision of the Secretary, the sole inquiry mandated by statute is whether his factual determinations are supported by "substantial evidence" on the record as a whole. 42 U.S.C. § 405(g); *see Cutler v. Weinberger*, 516 F.2d 1282 (2d Cir. 1975). However, the statute itself provides that the court may, "at any time, for good cause shown, order additional evidence to be taken before the Secretary." And the Second Circuit has indicated that even where the Secretary's determinations are "technically supported by substantial evidence", courts may remand " . . . where relevant, probative, and available evidence was either not before the Secretary or was not explicitly weighed and considered by him, although such consideration was necessary to a just determination of a claimant's application." *Cutler, supra*, at 1285.

Were there no extenuating circumstances in this case, this court would have no difficulty in finding that the determination of the administrative law judge, adopted as the Secretary's, was supported by substantial evidence. The latter standard has been defined to be "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion [citation omitted]." *Richardson v. Perales*, 402 U.S. 389, 401, 91

S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Resolutions of conflicts in the evidence are within the province of the administrative law judge as trier of the facts. *Richardson, supra*, at 399, 91 S.Ct. 1420. This court may not simply substitute its judgment of the evidence for that of the Secretary, if his decision is supported as required by statute.

■ It is certainly true that neither the presence of subjective discomfort or, to some degree, physiological or mental impairment automatically entitles a claimant to disability benefits. *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1506(a) and Appendix, ¶ 4.00(D) at 344. And the evidence above described could well support a finding by the Secretary that plaintiff was not "disabled" within the meaning of the Act.

■ However, a further consideration in this case stems from the fact that plaintiff was unassisted by counsel or a lay representative at the hearing before the administrative law judge.[3] Recent decisions in this Circuit have made clear that "[w]hile hearings on disability claims are not adversary proceedings, *Richardson v. Perales, [supra]*, where the disability benefits claimant is unassisted by counsel, the administrative law judge had a duty 'scrupulously and conscientiously [to] probe into, inquire of, and explore for all the relevant facts. . . .' " *Cutler, supra*, at 1286, *quoting Gold v. Secretary of HEW*, 463 F.2d 38, 43 (2d Cir. 1972). This rule has been interpreted to require that, where a claimant is unrepresented by counsel, the administrative law judge must be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Rosa v. Weinberger*, 381 F.Supp. 377, 381 (E.D.N.Y.1974) and cases cited therein.

■ The Second Circuit's decision in the *Gold* case suggests some of the criteria by which the performance of the administra-

tive law judge in this kind of situation is to be judged. In that case, the court considered significant whether the judge suggested that the applicant obtain counsel; whether he adequately considered the lay status of the applicant; whether he adequately developed the record regarding the applicant's claims; and whether he called witnesses on the applicant's behalf or indicated to her that she could call witnesses. Measured by these criteria, the performance of the administrative law judge was inadequate, in this court's view, to ensure a fair hearing "in accordance with the beneficent purposes of the Act." *Gold, supra*, at 43.

A reading of the transcript of the May 31, 1972 hearing indicates that plaintiff was treated with courtesy and respect by the administrative law judge. The judge duly noted that the claimant was entitled to be represented by counsel, as she had previously been informed in the notice of hearing, and she indicated that she would proceed without assistance.

However, the only medical reports were those previously mentioned, the most recent of which was prepared over six months prior to the date of the hearing. The only testimony elicited by the judge specifically concerning the intervening period dealt with restrictions on claimant's daily activities. Neither Dr. Friedberg nor Dr. Schlamowitz, who had previously treated the claimant, were called to testify.[4]

It is true that the claimant bears the burden of proof to establish her right to disability benefits. *Franklin v. Secretary of HEW*, 393 F.2d 640, 642 (2d Cir. 1968). However, in circumstances analogous to those in this case, the Court of Appeals has ruled that " . . . it was incumbent upon the administrative law judge to emphasize the desirability of producing, and to afford an opportunity to produce expert testimony, as to [the claimant's] medical

---

3. Plaintiff obtained counsel after she instituted this action *pro se*.

4. In a letter to plaintiff's attorney dated January 17, 1975 and annexed to defendant's memo-

randum of law in support of its motion, Dr. Schlamowitz has raised a new issue concerning plaintiff's emotional condition.

disabilities and their effect on her capacity to engage in any substantial, gainful work within the meaning of the Act. [citations omitted] The absence of such testimony may well have led the administrative law judge to place undue emphasis on the failure of X-rays, electroencephalograms, and other 'objective' clinical or laboratory tests conclusively to support [her] claim [of medical disability]." *Cutler, supra,* at 1286.

As troubling as the lack of medical testimony is the lack of any testimony or affidavit from plaintiff's last employer as to her observed ability or inability to perform the duties of a bookkeeper or the circumstances surrounding the termination of her employment. Plaintiff testified that her departure from Montauk Associates [5] in March of 1969 was necessitated by continuing pains and the need to sleep during the day. However, on the basis, apparently, of her residual ability to do light housework, the administrative law judge found that "she fully qualifies to do her regular work as a bookkeeper." In view of the claimant's protestation that she was unable to continue her former work, and in view of the fact that her former employer was a local business whose representative could have easily been called to testify in person or through an affidavit, this court is of the view that the administrative law judge failed to exercise that zeal of inquiry mandated by the *Gold* and *Cutler* cases in hearings where the claimants are without the assistance of counsel or lay representatives. The thirteen-minute administrative hearing in this case, while conducted with civility by the judge, was simply inadequate to develop the claimant's case, even in conjunction with the documents which form a part of the administrative record.

Accordingly, this case is remanded to the Secretary to give the claimant an opportunity to produce expert medical testimony regarding her disabilities, and evidence as to occupational opportunities open to a person of claimant's age, education, and skills in light of her physical impairments.