Submitted on record and briefs January 30, reversed and remanded July 17,
reconsideration denied September 27, petition for review denied November 26, 1985
(300 Or 332)

## BERWICK,
*Petitioner,*

*v.*

## ADULT AND FAMILY SERVICES DIVISION,
*Respondent.*

## (5-1501-EW0091-5; CA A31538)

703 P2d 994

Debra F. J. Lee, Jackson County Legal Services, Medford, filed the brief for petitioner.

Dave Frohnmayer, Attorney General, James E. Mountain, Jr., Solicitor General, and Philip Schradle, Assistant Attorney General, Salem, filed the brief for respondent.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

Petitioner seeks judicial review of a final order of the Adult and Family Services Division, entered after a hearing, which terminated her General Assistance (GA) benefits. She asserts, first, that the hearings officer's determination that she was no longer unemployable is not supported by substantial evidence and that his conclusion to that effect does not follow from the facts he found. She also asserts that the hearings officer should have assisted her in presenting evidence in her favor. We agree with the latter point and reverse and remand for a new hearing.

Petitioner is a widow in her early 50's, with an eighth grade education.[1] She has not worked for over 10 years, largely because of extensive physical and mental problems, including a history of several vascular surgeries, most recently the correction of cerebral aneurysms in 1982. She has also been diagnosed as manic depressive and as having a schizophrenic reaction; she was committed to the Oregon State Hospital in 1981 for the first problem. Although formerly she was energetic, she presently has little initiative. She lives in a small house next to that of her parents and does not do even the simplest housekeeping. She has heat in the house only when someone else builds a fire. She complains of poor vision, of being constantly dizzy, of falling down and of bumping into walls and furniture.

Petitioner began receiving GA most recently on December 14, 1981. In May, 1982, she had surgery on her cerebral aneurysms, followed by six months of recuperation. In January, 1983, AFSD arranged for a full medical evaluation. On April 11, 1983, the Medical Review Team (MRT) reviewed the file, including the reports of the January evaluation, and determined that, despite her problems, petitioner did not meet the criteria for unemployability. Petitioner requested a hearing; the hearings officer found that she was still eligible and ordered her GA continued for four months. He noted that petitioner had multiple complex problems which kept her from working and that "[t]here is a definite

---

[1] We describe the facts in detail, because a full understanding of them will indicate the ways in which the hearings officer's failure to give petitioner adequate assistance in presenting her case affected the outcome. We do not reweigh the evidence.

strangeness about her." He therefore ordered a psychiatric examination before the next review, along with such other tests as MRT might desire.

Soon after the hearings officer's determination, AFSD arranged for Dr. Pearson, a psychologist, to evaluate petitioner.[2] Her MMPI scores indicated serious psychological problems, but Pearson gave them little weight, because he thought they were inconsistent with his interview with her. In his opinion, petitioner was exaggerating her complaints and was not psychologically unemployable. He did note that petitioner might be suffering subtle effects of her vascular disease and that a neuropsychological evaluation might be appropriate. Petitioner had no evaluations after Pearson's. MRT again reviewed her file on November 23, 1983, and adhered to its April opinion. In its decision, it referred to a report of February 10, 1983, from Dr. Campagna, petitioner's neurosurgeon, which stated that petitioner had had excellent results from her operation and that she had no problems. It did not mention two reports from Campagna dated May 18, 1983, which were also in petitioner's file. In one, he stated that petitioner "is considered disabled for the next 60 days" and gave a final diagnosis of residual encephalophy secondary to cerebral and vascular infractions; in the other, he said that she was "not capable of sustaining gainful employment." AFSD again notified petitioner of its intent to close her grant and she again requested a hearing.

The hearing was held by telephone on February 9, 1984. Petitioner, her parents and a friend testified. Her father acted as her spokesman, describing petitioner's medical background and current condition. He read into the record a letter from Campagna dated January 19, 1984, in which he repeated his previous opinion that petitioner was not capable of gainful employment. At the hearings officer's request, petitioner's father sent the letter for inclusion in the file. The hearings officer did not indicate that the letter was inadequate or suggest that petitioner get a more detailed report. At the close

---

[2] Petitioner does not suggest that this examination did not comply with the hearings officer's order, although Pearson is a psychologist rather than a psychiatrist and the record and Pearson both suggest that petitioner's mental problems may have a physical component.

of the hearing, petitioner's father emphasized the importance of Campagna's opinion:

> "I still say the only one that's qualified to say whether she's able to work or not is Dr. Mario Campagna because he's the one that's been in her head. He's the one that's been treating her. And he's the one that knows what's wrong with her."

The hearings officer upheld the termination of benefits. He treated most of the medical evidence as of only historical importance because of the age of the reports, found that Campagna's note was insufficiently detailed to support a finding that petitioner suffered from a physical impairment and concluded that he was not persuaded that petitioner was disabled and unable to work.[3]

■ Petitioner's first assignment is that the hearings officer's findings are not supported by substantial evidence and that his conclusions do not follow from those findings. This assignment fails. The current medical evidence on petitioner's condition was limited and did not compel a finding that petitioner was unemployable. The previous hearings officer's determination that petitioner was unemployable was based in part on his perception that she was "strange" and his resulting concern about her mental condition. Pearson's report, if accepted, removed that concern. This hearings officer also adequately explained why the evidence did not convince him that petitioner had shown herself to be unemployable.

■ The fact that the record contains substantial evidence supporting the hearings officer's findings and the further fact that he explained his decision does not mean that the decision was right or that it was the best decision AFSD could make under the circumstances. Although we review agency factual determinations only to decide whether there is substantial evidence to support them, the agency in making its decision weighs all the evidence in the record and finds, it is to be hoped, in accordance with it. ORS 183.450(5). The agency

---

[3] Although the hearings officer did not rely on MRT's opinions that claimant was ineligible, we note that those opinions were based, in large part, on a statement by Campagna which was ambiguous in its context and which was more conclusory than the later one which the hearings officer considered inadequate for the purposes of this case.

tries to be right; we only decide whether it has been rational. However, for an agency to make an informed decision, it should acquire and consider all the relevant evidence. Petitioner's second assignment, that the hearings officer erred in failing to assist her in presenting such evidence, is well founded and requires that we reverse and remand. We first consider the agency's role in a case of this sort.

An agency contested case proceeding to determine if someone is eligible for benefits is not—or at least should not be—wholly adversarial. *See Richardson v. Perales,* 402 US 389, 403, 91 S Ct 1420, 28 L Ed 2d 842 (1971). AFSD is required to grant assistance in accordance with its rules and regulations and on the basis of need. ORS 411.710(1). The purpose of the contested case procedure is partly to protect a claimant who is improperly denied assistance, but it is also partly to aid AFSD in making the correct decision by giving those concerned an opportunity to bring out and explain all evidence relevant to the decision. AFSD's goal is to give assistance to those who are eligible as well as to deny it to those who are not; it is not trying to avoid paying damages to someone it may have injured, like a defendant in a lawsuit. Although a claimant may seek to overturn AFSD's administrative determination of ineligibility, and to that extent the hearing appears adversarial, the claimant—at least in theory—faces, on the other side, not an implacable adversary bent on denying her relief, but a decision maker whose tentative decision is far from final. If the claimant is eligible, his or her interest is the same as that of the agency. Whether the hearings officer upholds or reverses the administrative decision, AFSD will "win" if the final decision is the right one.

The non-adversarial nature of AFSD hearings explains much of their character. The claimant is the only party to the proceeding, for AFSD is the decider, not the opponent. The hearings officer is an AFSD employe, not an independent adjudicator, because the hearing is part of the agency decision making process, not an appeal from it. The hearing is relatively informal and all reliable relevant evidence is admissible. ORS 183.450(1). Except in unusual circumstances, the claimant may not seek judicial relief before the final order in the contested case, ORS 183.480(3), because, until then, AFSD has not made its decision. In short, the claimant and agency *do not become total adversaries until the*

agency makes an adverse final decision and the claimant seeks judicial review.

■ The hearings officer's responsibilities are shaped by the character of the hearing. The hearings officer is not a disinterested adjudicator observing two parties fighting. Rather, he or she aims both at helping AFSD make the best possible decision and at assuring the claimant a fair and full hearing. The two goals are not antithetical. Each aspect of those duties requires the hearings officer to make sure that the claimant is able to present all significant favorable evidence. When the claimant is represented by an attorney, the hearings officer can normally rely on the attorney to produce that evidence. However, when the claimant is unrepresented or is represented by a lay person, as petitioner was and as many AFSD claimants are, the hearings officer's responsibility is greater. An unrepresented claimant may not know how to present favorable evidence in the best light or even what evidence is favorable. Hearings officers must assist claimants, in part by following up on potentially favorable lines of inquiry and in part by helping claimants present their evidence in its best light.[4] The hearings officer has broad discretion in how to carry out this duty but, if the officer acts outside the range of that discretion, we may remand for further proceedings. ORS 183.482(8)(b)(A).[5]

Although we think the foregoing view of the hearings officer's role is not to be gainsaid, no Oregon appellate opinion has ever really discussed it, much less attempted to spell out its parameters and the consequences of failing to perform it adequately. We can, however, obtain some guidance from analogous federal decisions. Federal Social Security disability benefit hearings are similar to AFSD benefits hearings in the respects outlined above. Cases involving them have developed

---

[4] The decision of the first hearings officer to continue petitioner's benefits pending an additional evaluation was consistent with this obligation.

[5] AFSD emphasizes that the burden to prove continuing eligibility is on the claimant. OAR 461-09-097(5). This burden is not inconsistent with the hearings officer's role as we have outlined it. Although the hearings officer should assist the claimant in presenting evidence favorable to the claimant's position, it remains the claimant's responsibility to present evidence which persuades the hearings officer that the administrative determination should be changed. In the light of the informal and non-adversarial nature of these hearings, that is all that the burden of proof means. *See Dobrowolsky v. Califano,* 606 F2d 403, 406 (3rd Cir 1979).

a rule that, when the claimant is not represented by counsel, "a duty devolves on the hearing examiner to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts surrounding the alleged claim of right or privilege." *Hennig v. Gardner, Hennig v. Gardner,* 276 F Supp 622, 624-25 (ND Tex 1967), *quoted in Gold v. Secretary of Health, Education and Welfare,* 463 F2d 38, 43 (2d Cir 1972). The examiner (now Administrative Law Judge or ALJ) "must be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Rosa v. Weinberger,* 381 F Supp 377, 381 (ED NY 1974), *quoted in Cox v. Califano,* 587 F2d 988, 991 (9th Cir 1978).

■     Some of the cases applying the rule rely in part on the requirement in *former* 20 CFR § 404.927 (*repealed* August 5, 1980; similar provision in *present* 20 CFR § 404.944) that a claimant receive a full and fair hearing.[6] As the courts construed it, the regulation required the ALJ to make sure that the claimant receives such a hearing. However, the requirement of a full and fair hearing is implicit in the very right to a hearing, and it appears that the federal courts would require the same of an ALJ, whether or not the regulation existed. *See, e.g., Broz v. Schweicker,* 677 F2d 1351, 1364 (11th Cir 1982); *Thompson v. Schweicker,* 665 F2d 936, 941 (9th Cir 1982); *Cowart v. Schweicker,* 662 F2d 731, 735 (11th Cir 1981); *Smith v. Harris,* 644 F2d 985, 989 (3rd Cir 1981); *Dobrowolsky v. Califano, supra* n 5; *Smith v. Secretary of Health, Ed. and Welfare,* 587 F2d 857 (7th Cir 1978). This requirement benefits both the claimant and the agency; we believe it to be appropriate to Oregon and adopt it for contested cases involving individual benefits.

Under the federal rule, the ALJ's duty of scrupulous inquiry requires that he play an active role in eliciting evidence. He does not satisfy the duty simply by assisting an unrepresented claimant in presenting evidence which the claimant wishes to present; he must also pursue lines of

[6] The 1985 legislature enacted a law which will place in the Oregon Administrative Procedures Act a provision which is more explicit concerning the hearings officer's responsibility than is the rule on which the federal cases relied. The bill would amend ORS 183.415 by adding the following provision: "The officer presiding at the hearing shall insure that the record developed at the hearing shows a full and fair inquiry into the facts necessary for consideration of all issues properly before the presiding officer in the case." Or Laws 1985, ch 757 § 1.

inquiry which the claimant might not even know were available. The federal appellate courts have reversed ALJ decisons not only when the judge obviously lacked sympathy for the claimant's case, but also when he failed to develop a full record or to follow up on indications that favorable evidence might be available. The courts impose that duty, even when it appears that the claimant should have known that the evidence was available and would have helped his case. Several cases provide instructive examples.

In *Thompson v. Schweicker, supra,* the unrepresented claimant had a history of alcoholism and epilepsy and had been living in a sheltered environment for several years. The ALJ asked no questions about the claimant's alcoholism, the frequency and severity of his seizures, the conditions of his sheltered environment or a number of other issues. Concern with the claimant's work history to the exclusion of all else denied him a fair hearing. The hearing examiner in *Gold v. Secretary of Health, Education and Welfare, supra,* was concerned almost exclusively with the claimant's job history and with her receipt of World War II reparations from the West German government. He did not suggest that she call witnesses, because he considered her case unpersuasive. The claimant's husband was present at the hearing in *Cowart v. Scheicker, supra,* but the examiner did not question him about the claimant's condition. Although the claimant indicated that she was taking medication, the examiner did not elicit testimony on the effect of the medication on her ability to work. Because the claimant in *Smith v. Secretary of Health, Ed. and Welfare, supra,* had limited education and was suffering from psychological and physical disabilities, the court held it to be the ALJ's duty to suggest the desirability of producing, and to give her the opportunity to produce, expert testimony on those disabilities and their effect on her capacity to work. The ALJ in *Cox v. Califano, supra,* misread a physician's letter advising the claimant to begin vocational rehabilitation as a release to return to work rather than as a trial designed to determine whether he could return. The judge made no effort, and gave the claimant little opportunity, to elaborate on the meaning of the letter. Finally, the court in *Dobrowolsky v. Califano, supra* n 5, described two areas in which the ALJ failed to fulfil his duty of inquiry. First, the claimant's medical history indicated that he might have a condition which would

be a *per se* qualification for benefits. Counsel would have pursued that possibility and the ALJ should have sought additional evidence. Secondly, the judge's examination of the vocational expert was inadequate, because he did not ask the expert to explain his conclusion that the claimant could perform certain sedentary jobs and because it was not clear that the hypothetical questions to the expert considered all of the claimant's problems.

■        Those cases are cited as examples only. We do not need to give the hearings officers' responsibility the scope which some of the federal cases have given it in order to hold that, in this case, the hearings officer did not properly carry out his duty. Petitioner relied on Campagna's opinion; her father stressed it at the very end of the hearing. The hearings officer heard Campagna's opinion read over the telephone and knew then that it was conclusory. He did not tell petitioner that it was inadequate, and he did not suggest that she get a more detailed report. He could have granted a continuance for that purpose. OAR 461-09-099.[7] Without Campagna's statement, there is no current information in the record on petitioner's physical condition, one way or the other, although such information was clearly both desirable and available. Despite Pearson's report, the testimony indicated that something was wrong with petitioner; Campagna's report showed that he believed her to be unemployable. The hearings officer did not state that he found petitioner to be employable but only that there was insufficient evidence for him to find that she was unemployable. A detailed evaluation from Campagna could have supplied the missing evidence and produced a different result. Because of the hearings officer's failure to assist petitioner in presenting this evidence, there is a strong possibility that petitioner has been denied benefits to which

---

[7] It may be that the hearings officer did not realize that Campagna's statement was inadequate until after he read it or until he began preparing his order. He could still have reopened the hearing to give petitioner an opportunity to obtain a more complete statement. *Cf. Cowart v. Schweitzer, supra,* (ALJ arranged for two physicians to examine the claimant after the hearing and received their reports in evidence; the claimant should have had an opportunity to cross-examine the physicians). We do not suggest that a hearing should be reopened for every evidentiary problem. However, when it appears as clearly as it does here that an unrepresented claimant may be able to provide decisive evidence with little additional effort and that the hearings officer must have known that fact before issuing the final order, both fairness to the claimant and the accuracy of the agency's decision making require the hearings officer to take reasonable steps to secure the evidence.

she is entitled. We hold that that failure constitutes an abuse of the hearings officer's broad discretion in controlling a hearing. ORS 183.415(7), (9); 183.450; 183.482(8)(b). Petitioner has been denied the full and fair hearing contemplated by the constitution, the statute and the rule.

Reversed and remanded for a new hearing.