Argued and submitted May 21, 1984, reversed and remanded November 6, 1985,
reconsideration denied January 24, petition for review denied March 18, 1986
(300 Or 605)

# GRAVES,
*Petitioner,*

*v.*

# ADULT AND FAMILY SERVICES DIVISION,
*Respondent.*

(5-1701-FX0476-5; CA A29398)

708 P2d 1180

Brian E. Calvert, Grants Pass, argued the cause for petitioner. With him on the brief was Calvert & Davis, Grants Pass.

Philip Schradle, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Frank C. Gibson and Thomas M. Christ, Eugene, filed a brief *amicus curiae* for American Civil Liberties Union.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

Warren, J., concurring in part; dissenting in part.

## BUTTLER, P. J.

Petitioner[1] seeks review of a final order of the Adult and Family Services Division (AFSD) terminating his general assistance benefits. Because his entitlement to those benefits was based on a determination that he was mentally ill, he contends that the agency's failure to ensure his representation at the pretermination hearing denied him a meaningful opportunity to be heard, in violation of Article I, section 10, of the Oregon Constitution and the Due Process Clause of the federal Fourteenth Amendment. He also contends that ORS 183.418 denies him equal protection of the law by providing for interpreters at hearings for persons with hearing or speech impairments, while not providing representation for those with mental impairments.

Petitioner suffers from a mental illness diagnosed as schizoid personality or simple schizophrenia. Although the date of the onset of the illness is not documented, he claims that he has been dysfunctional since 1975. He had been receiving general assistance benefits through the Grants Pass branch office of AFSD. On March 4, 1983, the agency's Medical Review Team (MRT) issued an interoffice memorandum, stating that it had spoken with petitioner's therapist, had reviewed his mental health progress notes and had concluded that there was no specific data to support petitioner's unemployability pursuant to OAR 461-05-311.[2] On March 9, 1983, the agency notified petitioner that his grant would be terminated, because the submitted reports did not "document a physical or mental handicap, which would prevent employment."

On March 15, 1983, petitioner completed an administrative hearing request form on which he did not check the box marked, "I will obtain an attorney," but listed the name and address of an attorney, Boyer, in the space provided.

---

[1] Blake died after the case was submitted. His counsel moved to substitute the decedent's personal representative as petitioner. ORCP 12.10. We allowed the motion. We nonetheless refer to Blake as petitioner.

[2] OAR 461-05-311(1) provides:

"An A/R is unemployable when the Division determines that a physical or mental condition, diagnosed by a licensed medical professional (see rule 461-05-240) prevents the A/R from engaging in any type of gainful employment for a period of 60 days or more from the date of request for GA."

Although the record does not disclose whether a copy of the notice of receipt of the request for hearing was actually sent to Boyer, his name was crossed off the list of persons to whom a copy of the notice of May 13, 1983, was to be sent. On a pre-hearing summary form compiled by AFSD on the same date, however, express reference is made to the fact that the agency understood that petitioner was represented by Boyer.

Petitioner appeared at the June 13, 1983, hearing without representation and testified, "I've got an attorney, but he's a Social Security attorney and he's working on a SSI thing." The hearing was brief.[3] After the branch office representative testified about the findings of the MRT, petitioner offered the reports of two physicians, one of whom wrote that petitioner is unable to "maintain competitive employment." Petitioner also challenged the MRT's finding that he did not regularly attend therapy sessions and continually emphasized the significance of medication to his treatment. Aside from inquiring into the type of medication and dosage, the hearings officer solicited no further information from petitioner, who urged the officer to contact his doctor and mental health therapist to verify the information he had provided. There is no indication in the record that the hearings officer made any attempt to pursue the matter further.

In the "Conclusions and Reasons" section of his report, the hearings officer wrote, in pertinent part:[4]

"In this case, the doctors have provided specific objective findings about Mr. Blake's psychiatric condition. In addition, one physician has offered his opinion as to Mr. Blake's employability status. The Hearing Officer, upon reviewing these medical facts and opinions and after careful review of those offered through documents supplied by the Medical Review Team, concludes the following. Although the physicians' medical diagnoses are accepted as fact, the Hearing Officer places greater weight on the opinion of the Medical Review Team's finding on employability. The Hearing Officer holds the Medical Review Team's expertise in matching physical limitations with potential employability is more

[3] The transcript of the hearing consists of approximately three typed pages.

[4] The quoted language is agency boilerplate, rather than an evaluation of the facts in this case. *See Alvarez v. AFSD*, 72 Or App 429, 69 P2d 547, *rev den* 300 Or 64 (1985).

likely to be accurate. This contention is made by the Hearing Officer because:

> "(A)  In this particular case, no showing was made that these physicians have specific expertise in the complicated area of job placement.

> "(B)  The Medical Review Team, which is comprised of physicians, pharmacists, nurses, and other medical professionals who are licensed to practice in the State of Oregon do in fact have this expertise."

The findings of fact, conclusions and reasons were adopted by the agency in its final order.

■     In his first assignment of error, petitioner contends that he was denied due process of law by the agency's failure to ensure his representation at the pretermination hearing. The agency, on the other hand, contends that the issue is not properly before us because, from the representations made by petitioner, it reasonably concluded that he was being represented by an attorney. Although petitioner initially wrote the name of an attorney on the hearing request form and the agency's pre-hearing summary indicates its understanding that petitioner would be represented, it is unclear from the record whether the attorney actually was sent a notification. The agency's own list of persons to whom notice of the hearing was to be sent indicates that, at some point before the hearing, it determined that petitioner would be unrepresented. Moreover, that indication is buttressed by the absence of any inquiry at the hearing as to the whereabouts of petitioner's attorney. Petitioner's own remark that he had an attorney who was working on an SSI claim was unsolicited and unresponsive to the question put to him by the hearings officer.[5] Because petitioner obviously was unrepresented that day, and the agency appears to have anticipated that fact, petitioner is not precluded from challenging the agency's failure to ensure his representation.

The gist of petitioner's contention under Article I,

---

[5] Following the branch office representative's testimony as to the findings of the Medical Research Team, the hearings officer stated, "You don't agree with this, I take it Mr. Blake," to which petitioner responded, "No Sir, I don't. I've got a letter here from a doctor. The doctor told me to bring this in and give it to you. I've got an attorney, but he's a Social Security attorney and he's working on a SSI thing."

section 10,[6] and the Fourteenth Amendment[7] is that due process guarantees the opportunity to be heard "at a meaningful time and in a meaningful manner," *Goldberg v. Kelly,* 397 US 254, 267, 90 S Ct 1011, 25 L Ed 2d 287 (1970), and that representation of the mentally ill at welfare pretermination proceedings is a prerequisite to the fulfillment of that guarantee. The Oregon Supreme Court had once held that due process considerations under Article I, section 10, are governed by the parameters of the Fourteenth Amendment. *School Dist. No. 12 v. Wasco County,* 270 Or 622, 632, 529 P2d 386 (1974). More recent cases, however, have held that there is no Oregon due process guarantee and that claims must be based solely on the federal constitution. *See, e.g., State v. Clark,* 291 Or 231, 235 n 4, 630 P2d 810, *cert den* 454 US 1084 (1981). Accordingly, we turn to the cases decided under the federal constitution.

AFSD relies on *Goldberg v. Kelly, supra,* in support of its position that petitioner received the full extent of the due process to which he was entitled under the Fourteenth Amendment. In *Goldberg,* the Court held that due process mandates that individuals be afforded an evidentiary hearing before the termination of welfare benefits by public authorities. Although the Court specified that the hearing must include various safeguards, such as the opportunity to confront and cross-examine witnesses, it also stated that "we do not say that counsel must be provided at the pre-termination hearing, but only that the recipient must be allowed to obtain an attorney if he so desires." 397 US at 270. Because the court considered the right to counsel only in the context of the procedural rights of welfare recipients in general, however, the quoted language is not dispositive here. In fact, elsewhere in the opinion, the court emphasized that "the opportunity to be heard must be tailored to the capacities and circumstances of those who are to be heard." 397 US at 268-69.

---

[6] Or Const, Art I, § 10, provides:

"No court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property, or reputation."

[7] US Const, Amend XIV, § 1, provides:

"No state shall * * * deprive any person of life, liberty, or property, without due process of law; * * *."

Later cases have indicated that the evaluation of the due process right to appointed counsel in cases where an indigent litigant will not lose his physical liberty if he loses involves the balancing of various interests. In *Lassiter v. Department of Social Services,* 452 US 18, 101 S Ct 2153, 68 L Ed 2d 640 (1981), the Supreme Court considered whether indigent parents have a due process right to appointed counsel in parental termination proceedings. The Court explained:

"* * * [T]he Court's precedents speak with one voice about what 'fundamental fairness' has meant when the Court has considered the right to appointed counsel; and we thus draw from them the presumption that an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty. It is against this presumption that all the other elements in the due process decision must be measured.

"The case of *Mathews v. Eldridge,* 424 US 319, 335, 47 L Ed 2d 18, 96 S Ct 893 [(1976)], propounds three elements to be evaluated in deciding what due process requires, viz., the private interests at stake, the government's interest, and the risk that the procedures used will lead to erroneous decisions. We must balance these elements against each other, and then set their net weight in the scales against the presumption that there is a right to appointed counsel only where the indigent, if he is unsuccessful, may lose his personal freedom." 452 US at 26.

In weighing the particular interests involved in parental termination proceedings, the Court wrote:

"If, in a given case, the parent's interests were at their strongest, the State's interests were at their weakest, and the risks of error were at their peak, it could not be said that the *Eldridge* factors did not overcome the presumption against the right to appointed counsel, and that due process did not therefore require the appointment of counsel. But since the *Eldridge* factors will not always be so distributed, and since 'due process is not so rigid as to require that the significant interests in informality, flexibility and economy must always be sacrificed,' *Gagnon v. Scarpelli,* 411 US 778, 788, 36 L Ed 2d 656, 93 S Ct 1756 [(1973)], neither can we say that the Constitution requires the appointment of counsel in every parental termination proceeding. We therefore adopt the standard found appropriate in *Gagnon v. Scarpelli,* and leave the decision whether due process calls for the appointment of counsel for indigent parents in termination proceedings to be

answered in the first instance by the trial court, subject, of course, to appellate review. * * *" 452 US at 31. (Emphasis in original.)

In *Gagnon v. Scarpelli, supra,* the Court found that, because the need for counsel at probation and parole revocation hearings "derives, not from the invariable attributes of those hearings, but rather from the peculiarities of particular cases," the decision as to whether an indigent parolee or probationer is entitled to appointed counsel must rest with the agency charged with administering the system. 411 US at 789-90. Although the Court concluded that the state is not constitutionally obliged to provide counsel in all such cases, it stated:

> "* * * Presumptively, it may be said that counsel should be provided in cases where, after being informed of his right to request counsel, the probationer or parolee makes such a request, based on a timely and colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present. In passing on a request for the appointment of counsel, the responsible agency also should consider, especially in doubtful cases, whether the probationer appears to be capable of speaking effectively for himself. In every case in which a request for counsel at a preliminary or final hearing is refused, the grounds for refusal should be stated succinctly in the record." 411 US at 790.

Relying on the formula articulated in *Lassiter v. Social Services Division, supra,* petitioner and *amicus curiae* contend that, at the very least, mentally ill persons are entitled to representation at welfare pretermination proceedings in those cases in which it has been determined that a claimant lacks the capacity to comprehend the proceedings and meaningfully to present his case. The state argues that we need not consider whether due process requires a court-appointed attorney in every case or only in those cases in which a claimant has been determined to be unable to represent himself, because the record "clearly" reflects that petitioner here understood the nature of the proceedings and, in fact, ably represented himself below. An examination of the

record shows that, although petitioner made a gallant attempt to present evidence in his own behalf, he was apparently unaware of many of the privileges to which he was entitled,[8] and inappropriately focused his efforts primarily on convincing the hearings officer of the importance of medication to the treatment of his illness. Because *ex post facto* determinations are necessarily difficult, and it is well nigh impossible to discern from the record what difference adequate representation would have made in a given case, we cannot say that petitioner was capable of representing himself and was not entitled to representation as a matter of due process.

Starting with the presumption against the right to appointed counsel, we turn to a consideration of the various interests involved in welfare pretermination proceedings, the net weight of which must be weighed against that presumption. *Lassiter v. Department of Social Services, supra.* The private interest involved here is petitioner's rightful entitlement to welfare benefits, an interest which the Supreme Court has characterized as involving "the means to obtain essential food, clothing, housing and medical care [,] * * * the very means by which to live * * *." *Goldberg v. Kelly, supra,* 397 US at 264. As petitioner emphasized below, as a mentally ill person, he had an additional interest in continuing benefits:

> "* * * I can't live without this medication. I can't sleep or nothing. The other day I was out of the stuff and I freaked out and killed my cat because it was going to have kittens. I don't know why I did it or not.
>
> "Well, if they take me off [welfare], I won't have no way to get any medication or anything and I know that I need it. * * *"

Petitioner's interest in the continuation of welfare benefits is, therefore, a commanding one.

The state's interest in keeping fiscal and administrative burdens to a minimum is a consideration recognized in *Mathews v. Eldridge, supra,* 424 US at 334-35. Not only would the agency bear the additional cost of representation of a mentally ill claimant, but if counsel is provided to the

---

[8] The transcript of the proceedings below indicates that it is doubtful that petitioner knew he had a right to cross-examine the branch office representative or to subpoena the members of the MRT. Petitioner was also apparently unaware that he could call witnesses in his own behalf to testify. For instance, petitioner told the hearings officer, "And you can contact Dan Rowe or Dr. Williamson himself."

claimant, the agency may feel compelled to retain counsel in its own behalf. However, that would also be true if the claimant *retains* counsel, which he is entitled to do. Furthermore, as *amicus* points out, the state also has an interest in the least costly alternative to the care of the mentally ill. It notes that mentally ill persons who are destitute are likely to end up in state institutions and that the cost of *post hoc* institutionalizations must be substantially greater than the subsistence payments made to such people under the welfare system. Whether or not the denial of benefits will result in institutionalization in any given case, we recognize that not all participants in pretermination proceedings are mentally ill. However, we cannot say, on this record, whether the increased fiscal and administrative burdens imposed as the result of requiring that those who are mentally ill and are clearly unable to present or assist in presenting their claims be represented by counsel outweigh the possibility of increasing the expense of institutional commitment.[9]

Finally, we must evaluate the risk of erroneous deprivation of the entitlement to benefits when the mentally ill claimant is forced to represent himself and the probable value of providing representation. Although petitioner contends that it cannot be presumed that a mentally ill person has the capacity "to mold his arguments to the issues the decision maker appears to regard as important," *Goldberg v. Kelly, supra,* 397 US at 269, neither can we presume the opposite. Many mentally ill persons, with psychiatric therapy and medication and with financial assistance, are able to function reasonably well. Thus, it is apparent that the risk of erroneous deprivation will differ according to the acumen of the claimant, given his or her mental illness. When a claimant falls within the category of mentally ill persons who retain the ability to function rationally, the risk of wrongful denial of benefits is no greater than it is for most indigent claimants, who often lack the educational attainment to present claims with sophistication. On the other hand, when a claimant, as a result of mental illness, lacks the ability to focus on the issues presented, to organize and develop the evidence and to express

---

[9] This is particularly true here, because the agency has already established rules whereby claimants are entitled to notification of the right to retain counsel and to referral to any legal organization that offers legal services to disadvantaged persons who have expressed a desire for legal assistance. *See* OAR 461-09-071.

things in a coherent manner, the risk of erroneous deprivation is greater. That is particularly true in cases such as presently before us where a claimant is required to present evidence of a continued psychiatric illness, to challenge the MRT's qualifications or to rebut its findings with regard to that illness and to provide information on the qualifications of the doctors on whose reports he relies.[10] Many persons who suffer from a mental illness are not willing to discuss it or even to admit the problem.

Balancing the net weight of the interests involved and the risk of erroneous deprivation against the presumption that appointed counsel is required only in cases in which restraint of personal liberty is threatened, we conclude that mentally ill persons *may* have a right to counsel, determinable on a case-by-case basis by the AFDC hearings officer. To obviate the necessity of appointing counsel at the outset of every instance, we reiterate our holding in *Berwick v. AFSD,* 74 Or App 460, 703 P2d 994 (1985), that a hearings officer in pretermination cases must actively assist an unrepresented claimant in developing the evidence fully. That duty is particularly important when the claimant is mentally ill. The hearing is not, strictly speaking, intended to be adversarial; the purposes of ORS chapter 411 are to provide assistance for those who are eligible as well as to deny it to those who are not. As we said in *Berwick,* AFSD will "win" if the final decision is the right one. Although the claimant in *Berwick* had a history of mental illness and currently complained of both psychological and physical problems, she had her father as a spokesman. Nonetheless, we held that the hearings officer was obligated to advise the claimant that a doctor's report, on which she relied, was conclusory and that she needed a more detailed report. She did not contend that she had the right to appointed counsel, and we did not address that question.

The federal courts impose a duty on administrative law judges in social security disability cases similar to that

---

[10] The hearings officer's conclusions and reasons (*see* n 4, *supra*) indicate that he placed great weight on the fact that claimant made no showing that the physicians on whose reports he relied to establish unemployability "have specific expertise in the complicated area of job placement."

which we imposed on hearings officers in *Berwick.* For example, in *Smith v. Secretary of Health, Ed. & Welfare,* 587 F2d 857 (7th Cir 1978), the court said:

> "We are mindful that there is no constitutional right to counsel and the Secretary has no duty to urge counsel upon a claimant. Where, as here, the record discloses possible mental illness coupled with a misconception as to the role of a lawyer, the ALJ should have, at the very least, explained these interrelated subjects in greater detail and with greater care. This failure provides the backdrop for further deficiencies in the record. The mere failure of a disability claimant to be represented by a lawyer at a hearing is not in itself sufficient to warrant reversal on remand. *See Truss v. Richardson,* 338 F. Supp. 741 (D.C. Mich. 1971). However, the importance of counsel in administrative procedures has been emphasized. *See Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). * * *

> "* * * * *

> "In this case, Mrs. Smith was not represented by counsel at the hearing before the ALJ. While hearings on disability claims are not adversary proceedings, *Richardson, supra,* where the disability benefits claimant is unassisted by counsel, the ALJ has a duty " ' "scrupulously and conscientiously [to] probe into, inquire of, and explore for all the relevant facts ..." ' " *Gold v. Secretary of Health, Education and Welfare,* [463 F2d 38] at 43 [(2d Cir 1972)], quoting from *Hennig v. Gardner,* 276 F.Supp. 622, 624-625 (N.D. Tex. 1967). See also *Rosado v. Richardson,* 372 F.Supp. 469 (D. Puerto Rico 1973); *Erwin v. Secretary of Health, Education and Welfare,* 312 F.Supp. 179 (D. New Jersey 1970); *Coyle v. Gardner* 298 F.Supp. 609 (D. Hawaii 1969). The duty of counsel, set out under *Gold* was not met here. Given the claimant's lack of counsel, the absence of any psychiatric or psychological examination, her physical condition, lack of vocational expert at the hearing, and the claimant's limited educational background, it was incumbent upon the ALJ to emphasize the desirability of producing, and to afford an opportunity to produce expert testimony, as to her medical disabilities and their effect on her capacity to engage in any substantial, gainful work within the meaning of the Act. * * *" 587 F2d at 860.

Although almost all federal circuit courts have held that, when a social security benefits claimant appears without representation, the hearings officer is put under a heightened

duty to develop the evidence, *see Representation by Attorney of Social Security Benefit Claimant in Administrative Proceeding,* 59 ALR Fed 595, § 7, some courts have held that the examiner may have still greater responsibilities when the claimant is mentally impaired. In *Currier v. Secretary of Health, Ed. & Welfare,* 612 F2d 594 (1st Cir 1980), after recognizing the generalized "heightened duty" of a hearings officer, the court stated:

> "* * * [W]e believe this responsibility increases in cases where the appellant is unrepresented, where the claim itself seems on its face to be substantial, where there are gaps in the evidence necessary to a reasoned evaluation of the claim, and where it is within the power of the administrative law judge, without undue effort, to see that the gaps are somewhat filled—as by ordering easily obtained further or more complete reports or requesting further assistance from a social worker or psychiatrist or key witness. We emphasize that we do not see such responsibilities arising in run of the mill cases, but here appellant seems obviously mentally impaired to some degree, having been found unemployable by the Air Force and effectively so by his principal civilian employer and having been diagnosed as having a non-trivial psychiatric condition. We think the adminitrative law judge could not in these special circumstances simply rely, without some further development, on the skimpy evidence before him, including that presented by the uncounselled and mentally impaired appellant." 612 F2d at 598.

In *Berwick,* we recognized the heightened responsibility imposed on hearings officers by the federal courts but found it unnecessary to go so far in order to decide that the hearings officer in that case had not carried out his duty to the claimant, who had her father as a spokesman. We now hold that, when a claimant is mentally ill, is not represented by counsel and appears to be unable to address the issues involved in the hearing, the hearings officer must develop the record adequately to determine whether the claimant is entitled to benefits, not just decide the case on an inadequate record.[11] If reasonably necessary, he must call witnesses on the

---

[11] Oregon Laws 1985, chapter 757, section 1, amends ORS 183.415 to add a requirement that the hearings officer "shall insure that the record developed at the hearing shows a full and fair inquiry into the facts necessary for consideration of all issues properly before the presiding officer in the case." That requirement exists regardless of whether the claimant is mentally ill. We address here the situation where the claimant is mentally ill and appears to be unable to present evidence relevant to his or her claim and is unable to assist the hearings officer in the development of a record.

applicant's behalf or make arrangements for the applicant to call them. *See Gold v. Secretary of Health, Ed. & Welfare, supra; cf. Fessler v. Mathews,* 417 F Supp 570 (SD NY 1976). If the hearings officer is unable to get sufficient information from the applicant to develop an adequate record by the hearing process, counsel must be appointed.

In this case, the hearings officer not only failed to emphasize petitioner's rights at the hearing, but failed to elicit information from petitioner regarding the effects of his claimed illness, his response to medication or his perceived inability to work, despite petitioner's obvious attempt to discuss those subjects. Petitioner also provided the name of a person whom the hearings officer could contact to verify his attendance at therapy sessions, and requested that he contact the doctor who provided information regarding petitioner's employability. Although the hearings officer based his decision, in part, on the fact that there had been no showing that the doctor who considered petitioner unemployable had vocational expertise, he could have ascertained whether the doctor had such expertise by telephoning him or allowing petitioner additional time to submit evidence in that regard. In short, because the hearings officer viewed his role as limited to hearing the evidence submitted by petitioner, the record is inadequate to determine whether petitioner was entitled to appointed counsel; whether he was or not, he was denied the full and fair hearing required by the constitution. *Berwick v. AFSD, supra.*

Accordingly, the case must be reversed and remanded,[12] not only because of the hearings officer's failure to develop an adequate record, but also because his conclusions and reasons are inadequate. *Alvarez v. AFSD, supra,* n 4.

Reversed and remanded for further proceedings not inconsistent with this opinion.

**WARREN, J.,** concurring in part; dissenting in part.

I disagree with the majority's conclusion that petitioner may have a right to appointed counsel at the pretermination hearing. I think that the requirement of *Berwick v.*

---

[12] Given our disposition of the case, we need not consider petitioner's other assignments.

termination hearing. I think that the requirement of *Berwick v. AFSD,* 74 Or App 460, 703 P2d 994 (1985), that a hearings officer actively assist an unrepresented claimant to develop the evidence, provides all the process due under the Fourteenth Amendment, and that the availability of judicial review to enforce this obligation obviates any need for legal representation at the hearing.

In *Berwick,* we stated that the hearing officer's responsibility is to assist unrepresented claimants "in part by following up on potentially favorable lines of inquiry and in part by helping claimants present their evidence in its best light." 74 Or App at 466. We also stated that the officer has "broad discretion in how to carry out this duty" and that we may remand a case "if the officer acts outside the range of that discretion." 74 Or App 466. I agree that we should remand this case, because the officer did not fulfill his responsibility to assist petitioner's presentation of evidence. The majority's opinion points out the weaknesses in the officer's performance and suggests how it could be improved. 76 Or App at 228. If, on remand, the officer assists petitioner in the suggested ways, due process rights will be vindicated. If the officer fails to satisfy his responsibilities, we may review the case again and remand with further specific instructions. In either event, petitioner will receive an adequate hearing without requiring appointed counsel.

Due process guarantees the opportunity to be heard "at a meaningful time and in a meaningful manner." *Goldberg v. Kelly,* 397 US 254, 267, 90 S Ct 1011, 25 L Ed 2d 287 (1970). Consideration must be given to the nature of the decision-making process in deciding what due process requires in a particular case. *Berwick v. AFSD, supra,* notes that AFSD hearings are nonadversarial and informal in nature. These characteristics may be more effective than an adversarial proceeding to determine the merits of a claim. The majority, by holding that counsel may be required, potentially converts the proceeding into an adversarial one. We are required to presume that AFSD hearings officers fairly discharge their statutory duty to decide claims impartially and that they can adequately assist claimants in presenting evidence. *See Mathews v. Eldridge,* 424 US 319, 349, 96 S Ct 893, 909 47 L Ed 2d 18 (1976. I think that *Berwick v. AFSD, supra,* adequately assures that claimants have a meaningful opportunity to be

heard, and I see no reason to inject the presence of an attorney into these proceedings.

The majority fails to accord sufficient weight to the nonadversarial nature of AFSD proceedings and incorrectly applies the United States Supreme Court cases which it cites. *Goldberg v. Kelly, supra,* clearly holds that due process does not require appointed counsel in welfare pretermination hearings. 397 US at 270. There is no way the majority can dance around that holding. The majority's reliance on *Lassiter v. Department of Social Services,* 452 US 18, 101 S Ct 2153, 68 L Ed 2d 640 (1981), is misplaced. *Lassiter* involved a judicial proceeding to terminate parental rights. That was an adversarial proceeding in which the Department of Social Services was represented by an attorney. Even so, in applying the balancing test, the court concluded that the parent had not overcome the presumption that counsel be appointed only in cases where liberty is at stake.[1] The fact is that the Supreme Court has never required appointed counsel in a case where liberty is not at stake. The majority's discussion of *Gagnon v. Scarpelli,* 411 US 778, 93 S Ct 1756, 36 L Ed 2d 656 (1973), also ignores the point that liberty was at stake in that proceeding to revoke probation.

I think that the Due Process Clause requires us to remand this case but only to require the hearings officer actively to assist petitioner to present his evidence and to develop a more complete record. I would not also conditionally require the appointment of counsel to develop the record.

---

[1]Even if the balancing test of *Lassiter* were to be applied, I disagree with the majority's discussion of the factors. I would concede that the individual's interest is commanding. The state's interest in an efficient resolution of claims also appears to be significant. The risk of erroneous deprivation of benefits without legal representation does not appear to be so significant if the hearings officer takes an active role. Contrary to the majority's assertion, 76 Or App at 225, when a determination turns on medical evidence, the need for legal representation would appear to be lower. *See Mathews v. Eldridge, supra* 424 US at 344-45. This application of the balancing test does not result in a situation in which the individual's "interests were at their strongest, the State's interest were at their weakest, and the risks of error were at their peak," *Lassiter v. Department of Social Services, supra* 452 US at 31, which is necessary to overcome the presumption against requiring appointed counsel.