Argued and submitted June 9, reversed and remanded December 29, 1982

In the Matter of the Compensation
of Michelle C. Mendoza, Claimant.

MENDOZA,
*Petitioner,*

*v.*

SAIF CORPORATION,
*Respondent.*

(No. 80-07482; CA A23714)

655 P2d 1096

Peter McSwain, Eugene, argued the cause for petitioner. On the brief was Evohl F. Malagon and Malagon & Velure, Eugene.

Darrell Bewley, Appellate Counsel, State Accident Insurance Fund, Salem, argued the cause and filed the brief for respondent.

Before Warden, Presiding Judge, and Richardson and Young, Judges.

WARDEN, P. J.

## WARDEN, P. J.

Claimant seeks review of an order of the Workers' Compensation Board denying compensation. She filed a claim for compensation after she began to experience pain in her back and neck while working at a plant nursery. SAIF denied the claim and the referee and Board affirmed that denial. We find that claimant has met her burden to prove that the claim is compensable and reverse.

Claimant worked at Mitsch Nursery from August, 1979, to May, 1980. The work required bending, lifting, digging cuttings while on her knees and lifting pots weighing as much as 40 pounds. She testified that she sometimes experienced a sore back during work but that in May, 1980, the back pain continued after she had left work and became more severe. On May 24, 1980, she was examined by Dr. Willeford, who diagnosed heat myositis (inflammation) in claimant's trapezius and supraspinous muscles. He prescribed analgesics and exercise. His report included a history in which claimant stated that her work required a great deal of lifting and bending; he concluded that that "was most likely the precipitating factor or culprit."

Her condition did not improve, and she went to see Dr. Buttler, a chiropractor, on May 28. After being examined by him, she called her employers and informed them that she had been advised not to return to work for a time. Dr. Buttler's initial report to SAIF included his diagnosis that claimant was suffering from cervical, thoracic and lumrosacral strain. He recommended chiropractic manipulation, physiotherapy, exercise and rest. He prescribed a back brace. His report included his opinion that claimant's condition was work related. Although there are no other reports from Dr. Buttler in the record, claimant testified that she had continued seeing him for treatment every two or three weeks up to the time of the hearing.

Claimant was re-examined by Dr. Willeford on June 11. He found that the "muscles of her posterior neck and dorsal spine showed some spasm * * *." He prescribed anti-inflammatory drugs, heat and massage. He again diagnosed acute myositis primarily involving claimant's posterior neck and shoulder muscles.

■ The referee concluded that claimant did not carry her burden to prove the compensability of her back condition. That conclusion was based primarily on the referee's finding that claimant was not a credible witness. Although we usually defer to a referee's finding on the issue of credibility, *see Hannan v. Good Samaritan Hosp.,* 4 Or App 178, 471 P2d 831, 476 P2d 931 (1970), *rev den* (1971) the referee's opinion in this case is so replete with inaccurate and irrelevant statements that his finding on the issue of credibility is not to be relied upon. The Board stated: "Certainly the Referee could have and maybe should have more accurately recited the evidence on which be based his credibility finding." It concluded, however, that the referee's finding on credibility should not be disturbed. We do not agree.

■ The evidence in this case includes reports from a medical doctor and a chiropractor, both of whom treated claimant. Both were of the opinion that her myositis was work related. The referee discounted their opinions, because he concluded that the only connection between claimant's concededly real condition and her work "comes from the lips of claimant." The record does not support that conclusion. In the history given to both doctors, claimant described the type of work she did at the nursery. She also described that work in her testimony at the hearing. Co-workers of claimant, called by SAIF, also testified to the kind of work done, and the owners of the nursery described the work. Those descriptions of the work corroborated that given by claimant. From her description the doctors concluded that her myositis was work related. That conclusion cannot be said to come only "from the lips of claimant."

In addition, the referee seemed to place particular emphasis on the fact that claimant's co-workers testified, with one exception, that they had never heard claimant complain about her back. This testimony is not as significant as the referee appears to have considered it to be, because, as the referee himself noted:

"There is no reason to disbelieve that Dr. Willeford found acute myositis involving the posterior neck and shoulder muscles primarily."

There is no medical evidence indicating that claimant did not, in fact, suffer from acute myositis; nor is there any evidence that claimant experienced any trauma or injury outside of work that could have caused the condition. There was, in fact, testimony from claimant and from one of her high school teachers, with whose family claimant had been living in the spring of 1980, that claimant had had no accidents or injuries outside of work.

We find that claimant has met her burden of establishing that her myositis was compensable. We therefore reverse and remand to the Board for entry of an order requiring SAIF to accept the claim.