Argued and submitted June 14, 1985, reversed and remanded for reconsideration February 12, 1986

LAWS,
*Petitioner,*

*v.*

ADULT AND FAMILY SERVICES
DIVISION et al,
*Respondents.*

(5-3501-SZS268-0; CA A33867)

714 P2d 614

Amy Veranth, Legal Aid Service, Portland, argued the cause and filed the brief for petitioner.

Ann F. Kelley, Assistant Attorney General, Salem, argued the cause for respondents. With her on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Petitioner seeks review of an order of the Adult and Family Services Division which terminated his General Assistance grant. The present order is the Division's third attempt to make findings and conclusions to support an order upholding the termination of benefits. The issue is whether there is substantial evidence in the record to support the Division's action. ORS 183.482(8)(c). We conclude that there is not and reverse and remand for reconsideration.

Petitioner was granted general assistance in September, 1981, for disability due to drug abuse and a psychological impairment, severe antisocial personality disorder, diagnosed by his treating physician, Dr. Alleman, a general practitioner. His case was closed temporarily in March, 1982, because there was no psychiatrist's diagnosis. That deficiency was remedied quickly by the filing of a psychological report by Dr. Breckenridge, who concurred with Alleman's diagnosis. The case was reopened in April, 1982, without loss of benefits.

In October, 1982, AFSD reviewed petitioner's status, including reports from Drs. Larsen and Colistro, and an employability evaluation from Alleman. The Medical Review Team (MRT) determined that benefits should be terminated effective November 30, 1982, because there was no documentation of unemployability. A hearing was held, after which an order was issued on March 16, 1983, upholding the termination of benefits on the ground that "[t]he reports received have not met the Division's rules of documenting a disability. * * *" After petitioner sought judicial review of that order, but before submission, the Division withdrew its order for reconsideration. A revised order was issued on November 16, 1983, upholding the termination on the same ground as the first order.

Petitioner again sought judicial review. We reversed and remanded the case for findings on critical questions and for an explanation of the connection between the findings and the conclusion that petitioner is unemployable. *Laws v. AFSD,* 69 Or App 305, 684 P2d 1252 (1984). On remand, on the same record and without another hearing, the Division issued its third order, the one now before us, terminating petitioner's benefits. The referee who prepared the order went

to great lengths to discredit petitioner's evidence and found that petitioner is, and always has been, employable.

A person must be unemployable in order to be eligible for general assistance. OAR 461-05-305. An applicant or recipient is unemployable when a physical or mental condition, diagnosed by a licensed medical professional, prevents the applicant or recipient from engaging in any type of gainful employment for a period of 60 days or more from the date of the request for general assistance. OAR 461-05311(1). Because petitioner has a drug problem, he is also subject to the requirements of OAR 461-05-315(1) and (2):

> "(1)  GA A/Rs with a diagnosed alcohol or drug abuse problem must participate in a treatment program prescribed by a licensed medical professional as specified in rule 461-05-240.
>
> "(2)  A/Rs who refuse to participate in a treatment program are not eligible for GA."

There is no evidence that petitioner has refused to participate in a drug treatment program, and that is not the basis for terminating his benefits.

■      Petitioner is not physically impaired; he claims that he is psychologically disabled. Although he had been granted benefits originally, he has the burden of proving his continued eligibility. OAR 461-09-097(5); *Candiliere v. AFSD,* 72 Or App 383, 696 P2d 545 (1985). The record contains several medical opinions, all of which are consistent in their appraisal of his condition. Alleman has been seeing petitioner twice a month since June, 1980. His affidavit of February, 1983, is the only current medical opinion in the record. He states that petitioner is extremely unstable, subject to violent outbursts, and suffers from a severe personality disorder which renders him unemployable. His prognosis for recovery is "negative," and he states that petitioner has suicidal tendencies and has been hospitalized in critical condition on three occasions after suicide attempts.

Breckenridge provided a report to the MRT in April, 1982, and her opinion is consistent with Alleman's. She recommended vocational training and general assistance:

> "Recommendations:   Mr. Laws should be enrolled in a vocational rehabilitation program being initially evaluated to see

wherein lies his skills and appropriately enrolled, initially in a sheltered setting. He will need to be on general assistance during this period of transition. On-going supportive-confrontive, insight orientated psychotherapy with a trusting therapist (after an initial trust building process) as in a drug rehabilitation program (CODA) would be invaluable and essential, together with medications only on an as needed basis. Though currently the odds are against him and the prognosis bleak, with help and rehabilitation Mr. Laws could still forge ahead and make his life productive, meaningful and happy."

Colistro, a psychologist, examined petitioner in January, 1982, in connection with his eligibility for Social Security benefits. He reported to a vocational counselor in March, 1982, that petitioner would be best suited for vocational training in simple and repetitive jobs possessing high structure, predictability and supervision, with moderate to low interpersonal contact and low creativity and independent functioning.

An undated letter by Larsen, a psychiatrist, was submitted at the request of the MRT on its review of petitioner's continued eligibility. He diagnosed a history of drug abuse, "depression with suicidal ideation and intent by history, possible schizotypol personality disorder." He stated that petitioner's prognosis is "guarded," but recommended "vocational planning, job placement."

The referee concluded that petitioner is and always has been employable, and that he is not a danger to himself or to others.[1] We conclude that the findings in support of the conclusions are not based on substantial evidence in the record. The "CONCLUSIONS AND REASONS" portion of the order states:

"On its face much of the evidence in the record—Mr.

---

[1] Because petitioner has a history of drug abuse, the referee applied the standard contained in the procedure section of OAR 461-05-315:

"* * * A diagnosis of alcoholism or drug abuse must have supporting medical documentation of employability; i.e., that organic damage is demonstrable, or that there is severe impairment in social or occupational functioning, or that the person is a danger to self, to others, or to property."

We note that the most recent employability evaluation report, completed by Alleman on November 27, 1982, did not list drug abuse as the diagnosis supporting eligibility, but listed only severe antisocial personality disorder.

Laws' testimony and Dr. Alleman's reports—is favorable to Mr. Laws' position. However, the hearing officer finds that evidence to have little credibility."

The referee who prepared this order did not preside over the hearing and has never observed petitioner or any of the experts. Yet, he based his conclusion that petitioner has not met his burden of proof on his finding that petitioner and his treating physician are not believable.

Although we usually defer to a referee's finding on the credibility of witnesses when that finding is based on an opportunity to see and hear the witnesses, that is not the case here. Rather, the referee's credibility findings are based on the intrinsic nature of the reports and testimony, which we are able to evaluate as well as the referee.

The referee doubted Alleman's credibility on several bases: (1) he is a general practitioner and not a mental health professional, and his opinion is therefore not believable; (2) As a doctor receiving fees and petitioner's treating physician, he has a "vested interest" in the continuation of petitioner's benefits; (3) his affidavit is "histrionic," (4) his drug therapy was questionable. The first has nothing to do with credibility. The fact that Alleman is not a mental health professional may go to the weight to be given his opinion, but there is nothing in the record reflecting on his credibility, unless it is the fact that he is petitioner's treating physician. That alone, however, is not sufficient. Typically, the treating physician is in the best position to evaluate a petitioner's condition and, unless there is evidence that his opinion is motivated by his own economic well-being, there is no basis for finding him not credible.

The third and fourth findings regarding Alleman's credibility illustrate most pointedly the referee's zealous attempts to discredit all of petitioner's favorable evidence. In finding Alleman's affidavit "histrionic," the referee referred to the portion of the affidavit which states that petitioner experiences serious physical outbursts on the average of every other week "where [he] has assaulted someone." The referee doubted that, stating that "[t]here is nothing credible anywhere else in the record to indicate that Mr. Laws has ever assaulted anyone other than his girlfriend. * * *" In the referee's view, apparently, the girlfriend was not a "someone" to be considered in determining whether petitioner was a

danger to others. The referee found that Alleman's drug therapy was questionable, because, in a suicide attempt, petitioner took an overdose of the medication for which he had given petitioner a prescription for 100 tablets. The referee stated:

> "The [Physician's Desk Reference] specifically warns against allowing suicidal patients to have access to large quantities of this drug. Also, it is most interesting to note that Mr. Laws developed bizarre and unusual side affects [*sic*] to Mellaril—a not fun drug—so that Dr. Alleman would have to prescribe Valium—an extremely fun drug."

There is no evidence whatsoever to support the findings concerning the inappropriateness of Alleman's treatment. The referee simply formed his own lay opinion, on the basis of facts not in the record. *See Berwick v. AFSD,* 74 Or App 460, 703 P2d 994, *rev den* 300 Or 332 (1985).

The referee noted, from a medical text offered by petitioner, that petitioner's antisocial personality disorder is characterized by lying, cheating and stealing without remorse. He found, on that basis, that petitioner was not capable of testifying truthfully and that the psychological reports evaluating his condition were not reliable because, as a result of his personality disorder, he "faked" his responses and the severity of his problem. Those findings are mere conjecture. It is clear from the text on which the referee relied that a person may be diagnosed as having an antisocial personality disorder without having all of the manifestations of the disorder listed in the text. There is nothing to indicate that the diagnosis of petitioner's disorder was based on the factor on which the referee relied, and there is no other evidence that petitioner has a propensity for lying or that lying is an element of his personality disorder. In fact, he was considered reliable by Breckenridge. There is no evidence that he faked responses to psychological tests.

Petitioner apparently gave inconsistent information concerning the length of his employment as a plaster pourer. The referee, having never seen or heard petitioner testify, would be hard pressed to find on that basis alone that petitioner is a liar.

The referee relied on Colistro's report to support his finding that petitioner is capable of working at occupations

involving limited stress. The report was requested by a vocational counselor and merely recommends that petitioner be trained for certain jobs; it is implicit in that report that he needs rehabilitation. It cannot reasonably be viewed as an opinion that claimant is presently employable.

The record shows that petitioner regularly beat his girlfriend. The referee reasoned, however, that petitioner must not be a danger to himself or to others, because of the duration of his relationship with his girlfriend and her daughter:

> "* * * No reasonable person would subject herself and her daughter to any great danger for any long period of time. The woman and her daughter have stuck with Mr. Laws for some three years. Therefore the hearing officer does not believe the story that Mr. Laws was any real danger to his girlfriend."

That is speculation and is not supported by the record.

The most recent medical opinion in the record supports a finding of eligibility. The other opinions, which indicate affirmatively that petitioner is in need of rehabilitation, are not in conflict with his present unemployability. The referee's findings discrediting the evidence favorable to petitioner are not based on the record, and they do not support the conclusions. *See Mendoza v. SAIF,* 61 Or App 177, 655 P2d 1096 (1982). Accordingly, we must remand this case again.

Reversed and remanded for reconsideration.[2]

---

[2] Because of our disposition, we do not address petitioner's remaining assignments.