Argued and submitted January 7, Court of Appeal reversed;
Workers' Compensation Board Opinion and Order of
January 6, 1978, affirmed February 26,
petition for rehearing denied by opinion March 17, 1980
See 289 Or 93, 610 P2d 830

In the Matter of the Compensation of
Charlotte Morgan, Claimant.
MORGAN,
*Petitioner,*

*v.*

STIMSON LUMBER COMPANY, Employer,
*Respondent.*

(WCB 77-2922, CA 11451, SC 26190)

607 P2d 150

David W. Hittle, Salem, argued the cause for petitioner. With him on the brief were Dye & Olson.

R. Kenney Roberts, Portland, argued the cause for respondent. On the brief were Steven R. Reinisch, Lang, Klein, Wolf, Smith, Griffith & Hallmark.

Before Denecke, Chief Justice, and Tongue, Howell, Lent, Linde, and Peterson, Justices.

LINDE, J.

## LINDE, J.

The issue to be decided is whether the Workers' Compensation Board exceeded its statutory authority when it ordered an employer to pay a claimant a 10 percent penalty and attorney fees for delaying or refusing prompt payment or decision of a claim by failing to honor the claimant's request for certain documents pursuant to a Board rule.

The rule in question, OAR 436-83-460, provides:

"Upon demand of any claimant requesting a hearing, the DRE/SAIF and its representatives shall within 15 days of mailing said demand furnish to claimant or his representative, without cost, copies of all medical and vocational reports and other documents relevant and material to the claim which are then or come to be in the possession of the DRE/SAIF or its representatives, except that evidence offered solely for impeachment need not be so disclosed. Failure to comply with this section may be considered unreasonable delay or refusal under ORS 656.262(8)."

The issue arises from an aggravation claim filed by the claimant after a determination order closed her earlier claim for temporary total disability benefits. The aggravation claim itself was not decided because the referee concluded that the original claim was closed prematurely. Only the award of penalty compensation and attorney fees is in dispute.

Claimant presented her claim to the employer's insurance carrier by letter of March 1, 1977. The insurance company denied the claim on April 28. In a letter of May 4, 1977 to the insurance carrier, claimant's attorney requested copies of all medical and rehabilitation records, letters, forms, and other documents relating to the claim. The request was repeated on June 22. No documents were mailed in response to either of these claims.

The Board's referee in the claim proceeding concluded that there was no excuse for the failure to comply with claimant's request for documents within

15 days. Finding imposition of a penalty and attorney fees "appropriate for the unreasonable act" of disregarding the obligation to provide claimant copies of the requested documents, the referee awarded claimant 10 percent additional compensation and $350 in additional attorney fees. The Board adopted the referee's order.

In its petition for judicial review, the employer asserted two objections to the order: First, that OAR 436-83-460, quoted above, is not a valid rule, and second, that in failing to provide the information requested by the claimant the employer, or its insurance carrier, had not unreasonably delayed or refused payment of the claim. The Court of Appeals accepted the employer's argument against the validity of the Board's rule. It apparently did not consider it necessary thereafter to consider the second issue, and that issue is not before us. Having allowed review to consider whether the Board's rule exceeded its authority, we conclude that it did not. We therefore reverse the Court of Appeals and reinstate the Board's order.

The issue of the Board's authority divides into two parts. It clarifies the analysis to examine the two sentences of OAR 436-83-460, set out above, as two separate provisions. The first question is whether the Board had authority to require prompt compliance with a claimant's request for the documents listed in the first sentence of the rule in preparation for a hearing. The second question is whether the Board had authority to consider noncompliance a form of unreasonable delay within the statutory sanctions provided for such delay, as stated in the second sentence of the rule.

The Workers' Compensation Law, ORS 656.001 to 656.794, gives the Board authority to adopt rules of practice and procedure in connection with hearing and review proceedings. ORS 656.726(5) provides:

"The board may make and declare all rules and regulations which are reasonably required in the

performance of its duties, including but not limited to rules of practice and procedure in connection with hearing and review proceedings and exercising its authority under ORS 656.278. Such rules may provide for informal prehearing conferences in order to expedite claim adjudication, amicably dispose of controversies, if possible, narrow issues and simplify the method of proof at hearings. The rules shall specify who may appear with parties at prehearing conferences and hearings. ORS chapter 183 is applicable whenever specific procedures covering rulemaking are not provided for in ORS 656.001 to 656.794."

The discovery provision embodied in the first sentence of OAR 436-83-460 plainly is a rule of practice and procedure to expedite the effective disposition of claims for which the Board is responsible. The employer does not really deny this. It does not contend that the regulation is not a rule of practice or procedure within the authority granted by ORS 656.726(5) standing alone. Rather, it argues that the Board's authority is confined by the presence in the statute of another section which expressly requires that medical and rehabilitation reports furnished to the Evaluation Division of the Workers' Compensation Department be made available to the claimant or the employer upon request. ORS 656.268(2).[1]

---

[1]

"When the injured worker's condition resulting from a disabling injury has become medically stationary, unless he is enrolled and actively engaged in an authorized program of vocational rehabilitation, the State Accident Insurance Fund or direct responsibility employer shall so notify the Evaluation Division, the worker, and contributing employer, if any, and request the claim be examined and further compensation, if any, be determined. A copy of all medical reports and reports of vocational rehabilitation agencies or counselors necessary to make such determination also shall be furnished to the Evaluation Division and to the worker and to the contributing employer, if requested by such worker or employer. If the attending physician has not approved the worker's return to his regular employment, the fund or direct responsibility employer must continue to make temporary total disability payments until termination of such payments is authorized following examination of the medical reports submitted to the Evaluation Division under this section."

The argument is unpersuasive. There is no reason to believe that by including one provision for access to relevant reports in the statute the legislature meant to restrict the power it had otherwise given the Board to facilitate expeditious claims procedure by requiring prehearing disclosure of information. More plausibly, the statutory provision simply shows that the legislature recognized a need to assure at least the degree of access provided in ORS 656.268(2), without considering or awaiting what the Board might require by its rules. It would turn the legislature's apparent purpose on its head to read ORS 656.268(2) as if it meant to enact a limitation on required prehearing disclosure. We conclude that the rule stated in the first sentence of OAR 436-83-460 was within the Board's rulemaking authority under ORS 656.726(5).

The employer's second attack on the rule is that the statute does not delegate to the Board authority to create financial penalties. The Court of Appeals accepted this contention in holding that the Board had exceeded its rulemaking authority. The court quoted *Ore. Newspaper Pub. v. Peterson*, 244 Or 116, 123, 415 P2d 21 (1966), for the proposition that "an administrative agency must, when its rule-making power is challenged, show that its regulation falls within a clearly defined statutory grant of authority."

Such abstract statements about the nature and scope of delegated authority gain meaning from the context in which they appear. In the *Oregon Newspaper Publishers Association* case, the State Board of Pharmacy had promulgated a rule prohibiting pharmacists to advertise prescription drugs. The rule was a major, substantive intervention into the market place for medicines, affecting consumers and advertising media, including plaintiffs in that case, as well as the regulated pharmacists, and possibly reaching to the constitutional limits of regulation. *Cf. Va. Pharmacy Bd. v. Va. Consumer Council*, 425 US 748, 96 S Ct 1817, 48 L Ed 2d 346 (1976). It was not merely a means

chosen in administering a program concededly assigned to the Board but an important extension of regulation in a controversial area. The court held that the Board could not undertake this unless it could show that it was carrying out a policy entrusted to it by the politically responsible Legislative Assembly in the authorizing statute. The majority found nothing in the legislation to suggest that advertising was contemplated as a subject of regulation by the Board. 244 Or at 124.

In *U. of O. Co-Oper. v. Dept. of Rev.,* 273 Or 539, 542 P2d 900 (1975), the court similarly recited in general terms that agencies are restricted to the powers granted them by statute, and that the agency may not by its rules alter or enlarge the statute. That was a tax case, in which the taxpayer claimed that a rule of the Department of Revenue interpreted a particular tax exemption too narrowly. The court's opinion stated:

> "The Department of Revenue cannot rewrite the law, it can only fill in the interstices in the legislation to aid in the accomplishment of the statute's purposes. *Van Ripper v. Liquor Cont. Com.,* 228 Or 581, 591, 365 P2d 109 (1961). The exemption given by ORS 317.080(4) cannot be eliminated in effect by an administrative regulation. The Department of Revenue has exceeded its authority in adopting and applying this regulation."

273 Or at 551. All these recitals are, of course, indisputable, but they merely restate the question. They would not lead to one or another decision until the court itself interpreted the specific tax exemption at issue, which it did in favor of the taxpayer's position.

The *Van Ripper* decision, quoted in the foregoing excerpt, sustained regulations of the Oregon Liquor Control Commission that limited licenses to sell liquor by the drink to establishments that obtained 25 percent of their gross income from the sale of food. Like the Pharmacy Board's advertising rule and unlike the rule in this case, the regulation in *Van Ripper* was a

farreaching substantive policy adopted by the commission under very general statutory terms. Nevertheless, the court concluded that the rule was within the range of policy delegated to the commission.[2] In short, different holdings on the validity of agency rules, as in the three cases reviewed above, do not result from different generalizations about agency rulemaking but from scrutiny of the scope of the responsibilities for substantive policy and for its administration that are assigned to the agency under the particular law at issue.

Misunderstanding of the relationship between an agency's statement of a rule and its underlying statutory source can arise from the wide range of different statements that are "rules" in administrative law. The Administrative Procedure Act, ORS 183.310 (7) defines "rule" for purposes of that act as follows:

> " 'Rule' means any agency directive, standard, regulation or statement of general applicability that implements, interprets or prescribes law or policy, or describes the procedure or practice requirements of any agency. The term includes the amendment or repeal of a prior rule, . . ."

subject to exceptions not relevant here.

Thus agency rulemaking may be the means prescribed by the legislature for regulating an area of activity, setting rates, standards, requirements, or procedures, or defining specific aspects of a program managed by an agency, in lieu of prescribing such regulations, standards, procedures, or program elements in the statute itself. Since such a rule deliberately makes new law, the authority for such delegated lawmaking must have been granted by the Legislative Assembly. On the other hand, an agency makes a rule, within the broad meaning of that term, when it does

---

[2] Apart from the Liquor Control Act itself, the court cited the constitutional amendment that had authorized the sale of liquor by the glass in "establishments where food is cooked and served" and which provided that legislation enacted under it "shall be liberally construed." Or Const Art. I, § 39.

nothing more than publish its official position on how it interprets a requirement, standard, or procedure already provided in the governing statute itself, and how it proposes to administer this statutory provision. Such a statement that "interprets or prescribes law or policy, or describes the procedure or practice requirements of any agency" is also a "rule" under ORS 183.310(7), quoted above. Generally, there is no reason why an agency should not state as a rule a policy which the statute authorizes it to adopt and follow without making a rule, unless it appears that the statute means to limit the agency to case-by-case adjudication. This does not depend on a statutory grant of rulemaking authority. Indeed, by virtue of the APA an agency that disclaims having such authority cannot thereby escape the act's provisions governing the making, publication, and judicial review of rules. ORS 183.330 to 183.400. *Cf. Burke v. Children's Services Division*, 288 Or 533, 607 P2d 141 (1980).

The prehearing discovery requirements of OAR 436-83-460 are an exercise of delegated rulemaking authority, as stated above. But the Board does not claim any authority to create financial sanctions by rule, as charged by the employer. It relies on the provision for such sanctions in the statute itself. ORS 656.262(8), to which the second sentence of the Board's rule refers, provides:

> "If the fund or direct responsibility employer or its insurer unreasonably delays or unreasonably refuses to pay compensation, or unreasonably delays acceptance or denial of a claim, the fund or direct responsibility employer shall be liable for an additional amount up to 25 percent of the amounts then due plus any attorney fees which may be assessed under ORS 656.382."

The second sentence of the rule merely announces that failure to respond promptly to a claimant's request for information of the kind specified in the first sentence

in preparation for a hearing "may be considered unreasonable delay or refusal" under this sanctions provision. The Board regards this not as delegated rulemaking but as an announcement of how it interprets and intends to administer the statute. Even so, such an announcement is a rule for purposes of the Administrative Procedure Act and therefore had to be so promulgated.

The agency policy announced in the second sentence of the rule is not an unreasonable way to interpret and administer the statute. The Board is entitled to take the view, within its responsibility for and experience with administering hearings, that a practice of prompt disclosure of all relevant information to the claimant will generally expedite the disposition of a claim and the eventual payment, and that failure or delay in such disclosure will tend to obstruct or delay a proper disposition and payment of a claim. The Board does not say, in the challenged sentence, that every failure or delay to furnish the requested documents to the claimant automatically entitles the claimant to the extra compensation and attorney fees provided by the statute. On the other hand, when the Board believes this procedure to be necessary for the expeditious determination of claims, it need not let an employer disregard the requirement and wait to litigate whether or not it actually caused a delay. The Board's rule gives notice that noncompliance "may be considered unreasonable delay" under the statute. The rule is consistent with the purpose of the statute, which is to secure promptness in claims disposition, not to invite the parties to speculate on such after-the-event litigation about the actual consequences of noncompliance in the particular case.

The referee did not apply the rule as a "per se" entitlement to extra compensation and attorney fees for the claimant. He determined that he found such payments in this case "appropriate." No challenge

either to the form or to the factual predicate of that finding is before us. Nor would we examine its factual basis *de novo. See Sahnow v. Fireman's Fund Ins. Co.,* 260 Or 564, 491 P2d 997 (1971). The Court of Appeals did not address that issue in invalidating the Board's rule. For the reasons stated, we hold that the rule itself is within the Board's authority. Accordingly, the decision of the Court of Appeals is reversed and the Board's order is affirmed as it was issued.