Argued and submitted September 2, decision of Court of Appeals affirmed, decision of Employment Appeals Board reversed, case remanded to EAB with instructions November 12, 1986

## DENNIS,
*Respondent on Review,*

*v.*

## EMPLOYMENT DIVISION,
*Petitioner on Review.*

(No. 85-AB-48; CA A34785; SC S32841)

728 P2d 12

Philip Schradle, Assistant Attorney General, Salem, argued the cause for petitioner on review. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

David S. Tilton, Coos Bay, argued the cause for respondent on review. With him on the brief were Susan I. Buckles, Hillsboro, and Oregon Legal Services Corp.

LENT, J.

**LENT, J.**

The Employment Division denied the claimant, respondent Dennis, unemployment benefits on the ground that she was not willing to work full time. Following a hearing, the denial was affirmed by a referee and by the Employment Appeals Board (EAB). The Court of Appeals reversed and remanded for reconsideration. *Dennis v. Employment Div.,* 77 Or App 633, 713 P2d 1079 (1986). The Court of Appeals held that a remand was necessary (1) because the referee violated the due process clause of the Fourteenth Amendment to the Constitution of the United States by failing to assist the claimant in developing a hearing record and (2) because the referee failed to make an express determination of the claimant's credibility.

We affirm the Court of Appeals' decision to remand for reconsideration, but we do so on different grounds. We conclude that a remand is necessary because the referee violated OAR 471-40-025(1) by failing to inquire fully into the matters at issue;[1] therefore, we do not decide whether such an inquiry was required by the due process clause. *See State v. Tooley,* 297 Or 602, 608, 687 P2d 1068 (1984); *State v. Davis,* 295 Or 227, 240, 241 n 18, 666 P2d 802 (1983); *Cole v. Dept. of Rev.,* 294 Or 188, 190, 655 P2d 171 (1982). Because the referee's assessment of the claimant's credibility may be a factor on remand, we shall discuss the kind of record that will require the referee to explain his or her decision.

I.

On October 15, 1984, the claimant was laid off from her job as a part-time secretary for a real estate appraisal firm, and she applied for unemployment benefits the next day. In response to a question on the application form, she indicated that she was willing to work only part time.[2] When, on

---

[1] OAR 471-40-025(1) provides:

"The purpose of the hearing is to inquire fully into the matters at issue and to make a decision on the basis of the evidence adduced at the hearing."

[2] The question on the application form asked "WILL YOU WORK:" followed by nine choices and instructions to "check the appropriate boxes" corresponding to the choices. The claimant checked the boxes next to "day shift" and "Part-time only." The application did not notify claimants that they had to be willing to work full time in order to receive benefits. In her response to the Employment Division's petition for review, the claimant noted that the form has been revised. Immediately following the question "WILL YOU WORK," the form now states, "Note: Unemployment insurance claimants must be available for BOTH full-time and part-time work."

October 30, an Employment Division representative questioned the claimant about her response to this question, the claimant stated that she was seeking part-time work because her previous work was part time and because she had a twenty-month-old child. On the basis of this statement, the Employment Division denied her claim for benefits. Under an Employment Division rule, unemployment benefits are paid only to individuals who are willing to work full time.[3]

The claimant requested a hearing, at which she was unrepresented by an attorney or a person experienced or trained to represent unemployment compensation claimants.[4] She testified that she intended to express on the application form and to the Employment Division representative only a preference for part-time work; she was not unwilling to accept full-time work. She continued:

> "I have looked for both full and part-time work. I have gone on several referrals that have been just part time, although I have also applied for full time. And in contacting people I've asked if there's anything open, not, do you just have—you know—20 or 25 hours a week * * *.
>
> "* * * * *
>
> "I'm willing to accept full-time work, certainly."

The referee affirmed the denial of benefits. Despite the

---

[3] ORS 657.155(1)(c) provides:

"(1) An unemployed individual shall be eligible to receive benefits with respect to any week only if the assistant director finds that:

"* * * * *

"(c) The individual is able to work, is available for work, and is actively seeking and unable to obtain work. * * *"

OAR 471-30-036(3)(a) provides:

"(3) For the purposes of determining whether or not an individual is available for work under the provisions of ORS 657.155(1)(c), the Administrator shall require at a minimum that the individual:

"(a) Be willing to work full time during all of the usual hours and days of the week customary for the work being sought * * *."

[4] ORS 657.270(5) provides:

"* * * a claimant or employer is 'unrepresented' if not represented by an attorney, paralegal worker, legal assistant, union representative or person otherwise qualified by experience or training."

This subsection was enacted after this claimant's hearing. Or Laws 1985, ch 404, § 1.

claimant's testimony that she was willing to accept full-time work, the referee concluded that

> "her actions to date provide little support for her words. The only two prospective employers that she has contacted that she knew had openings, had openings for part-time only. She has not aggressively pursued the help wanted ads in the newspaper for secretarial positions, and she has not sought job referrals from the Employment Division. This work search is not sufficient to overcome the presumption that what she initially said about her availability for work was completely accurate and remains accurate."[5]

By a two-to-one decision, the EAB affirmed and adopted the referee's decision.[6]

The Court of Appeals reversed and remanded for reconsideration. The court held that under the due process clause:

> "When the claimant is unrepresented, the [referee] must assist her by following up potentially favorable lines of inquiry and by helping her to present her evidence in the best light. Although the [referee] has broad discretion as to how that duty is carried out, if the [referee] acts outside the range of that discretion, we may remand for further proceedings."

77 Or App at 636-37 (citing *Berwick v. AFSD,* 74 Or App 460, 466, 703 P2d 994 (1985)). The Court of Appeals concluded that the referee had acted outside the range of discretion because the referee did not pursue specific evidence concerning the claimant's work search and because the referee elicited

---

[5] We know of no such statutory or common law presumption. We assume that the referee did not use the word in its sense given by the Oregon Evidence Code. *See* OEC 308-311. If the referee did, it was error.

[6] The dissenting member of the EAB wrote:

> "I dissent. This claimant has had a recent employment history of working only part time. I do not find it unreasonable that she would initially indicate to the Employment Office that she would like to work part time, since she had been doing so in the past and had established a valid unemployment insurance claim upon that type of employment. It would appear that she at most expressed a preference for the type of work she desired rather than an outright refusal to work any other hours than part time. It does not appear that the Employment Office attempted to place her upon notice that the expression of a preference for part time work would cause a denial of benefits. In fairness it would seem that the least the Employment Office could do would be to advise the claimant what was required in terms of her availability and then inquire about what hours she was willing to work. I do not find this claimant should be denied benefits because of the entrapping action of the Employment Division."

evidence primarily for the weeks of October 14 through October 26, even though the claimant's benefits were denied for the weeks of October 27 through November 17 as well. The Court of Appeals also concluded that the referee's discussion regarding the claimant's credibility was inadequate for review because the referee did not make an "express credibility determination." The referee was directed to make new findings on remand.

We allowed the Employment Division's petition for review.

## II.

A hearing on a claim for unemployment benefits must satisfy the requirements of the due process clause of the Fourteenth Amendment. *See, e.g., Fusari v. Steinberg,* 419 US 379, 95 S Ct 533, 42 L Ed 2d 521 (1975). Nevertheless, because we hold that the referee violated an administrative rule requiring a referee to inquire fully into the matters at issue, we do not decide whether the due process clause imposes a similar duty on the referee.[7]

■ The purpose of a hearing on a claim for unemployment benefits "is to inquire fully into the matters at issue and to make a decision on the basis of the evidence adduced at the hearing." OAR 471-40-025(1). Because of the broad powers conferred upon the referee to conduct and control the hearing,[8] the responsibility for ensuring that a full inquiry is made

---

[7] ORS 657.270(5) provides, in relevant part:

"Where the claimant or the employer is unrepresented at the hearing, the referee shall explain the issues involved in the hearing and the matters which the unrepresented claimant or the employer must either prove or disprove. The referee shall insure that the record developed at the hearing shows a full and fair inquiry into the facts necessary for consideration of all issues properly before the referee in the case. * * *"

At the time of the hearing in this case, ORS 657.270(5) had not been enacted. Or Laws 1985, ch 404, § 1.

[8] OAR 471-40-025(3) provides:

"The referee shall conduct and control the hearing. The referee shall determine the order of presentation of evidence, administer oaths, examine any witnesses * * *."

Moreover, OAR 471-40-026(1) permits the referee to continue the hearing at the request of a party or on the referee's own motion.

lies with the referee. This responsibility is especially important whenever the claimant is unrepresented by an experienced advocate at the hearing.

■   The Employment Division's contention that a duty to inquire fully into the matters at issue improperly forces the referee into the role of an advocate for the claimant misconceives the duty of the referee. As a result of the duty to inquire and of the broad powers conferred on the referee to conduct and control the hearing, the adjudication of unemployment benefits is more inquisitorial than adversarial.[9] If this inquisitorial system is to work, the referee must seek out all the relevant facts. *Cf. Cox v. Califano,* 587 F2d 988, 991 (9th Cir 1978) (social security disability determination). This does not mean that the referee acts as the claimant's counsel. Under the rule, the referee must inquire fully into the facts, whether favorable or unfavorable to the claimant. The referee is no more an advocate for an unrepresented claimant than for an unrepresented employer or for the Employment Division.

The Employment Division also contends that a duty of inquiry will be unduly burdensome for referees. We are mindful of the need for administrative efficiency, but we cannot agree with this contention. First, any burden is one that is imposed by the Employment Division's own rules and, now, by statute. *See* ORS 657.270(5). Second, a duty to inquire fully into the matters at issue is simply a requirement that relevant evidence does not go unpresented because of the ignorance or inexperience of a party. The necessary inquiry should be apparent from the nature of the proceedings and the evidence adduced. The referee is not required to cast aimlessly for evidence.

■   The issue presented to the referee in this case was whether the claimant was willing to work full time. The claimant testified in general terms that she was willing to work full time and had sought full-time work in addition to part-time work. Her work search record, which was admitted into evidence, listed 17 employer contacts through November

---

[9] The adjective "inquisitorial" tends to be used in unfavorable contrast with "adversarial" in American descriptions of legal procedure, perhaps because it calls forth ideas of the medieval Inquisition. We use "inquisitorial" not in any ecclesiastical sense but to point out that under OAR 471-40-025(1) and (3) the referee does not merely umpire a dispute between adversaries. The rules impose on the referee a duty to "inquire," which is exactly what an "inquisition" or "inquisitorial procedure" means.

6. Given her testimony, the referee had a duty to ask the claimant for specific details about these contacts that would, or perhaps would not, support that testimony. The referee did not adequately do so.

■    First, the referee made little effort to elicit from the claimant whether the specific jobs that she sought were advertised or referred as full-time jobs or, if not advertised or referred, whether the claimant knew that the employer employed only full-time workers. The referee did ask the claimant if she had indicated to employers that she wanted part-time work. The claimant responded, "Well, just the ones that I went to referrals that were for part-time work." The referee then focused the inquiry on two referrals that were for part-time work. The referee did not inquire about referrals for full-time work or about the hours of work of employers that she contacted without referrals. The only other specific question asked regarding hours of work was whether two jobs that she had sought that were advertised in the paper were full time. This was not a full inquiry into the matters at issue. The claimant testified that she was available for full-time work and had sought full-time work. Specific details regarding the hours of work of the jobs that she had sought were the most relevant information that the referee could have elicited from her. The referee's finding of fact that the claimant contacted only two employers whom she knew to have openings, and that both of them offered only part-time work, was unjustified in light of the failure to make a full inquiry.

Second, the claimant's work search record, which was admitted into evidence, extended only through November 6, the date that she requested a hearing. Her claim for benefits was for the period through November 17. Although in her testimony she referred to an employer that she contacted after November 6, the referee did not question her about other unlisted contacts that she might have made after that date. The referee's failure to do so was particularly unjustified in this case since the claimant had testified that until the administrative denial of her claim, she did not realize that she was required to seek full-time work. Quite possibly, then, the claimant began to seek full-time work at that time.[10] Specific

---

[10] We do not express an opinion as to the conclusions to be drawn from the fact that she learned of the need to seek full-time employment midway through the period

information about her work search during this period could have supported her claim for benefits for all or part of the period claimed.

The referee's failure to make a full inquiry into the matters at issue, as mandated by OAR 471-40-025(1), requires us to remand this case to the EAB with instructions to remand to the referee for the taking of additional evidence.[11]

III.

Although the Court of Appeals remanded because it held that the referee failed to assist the claimant in developing a record, it went on to conclude that a remand would also have been necessary because the referee failed to make express findings of the claimant's credibility regarding her willingness to work full time. 77 Or App at 637. Because the claimant testified that she was willing to work full time, the referee's inference, based on other evidence, that she was not willing to work full time implied, even if it did not expressly state, that her testimony was not believed.

Several decisions of the Court of Appeals have required express credibility determinations whenever the claimant's credibility is crucial to the decision of the claim. *See, e.g., Lewis v. Employment Division,* 66 Or App 303, 673 P2d 1376 (1984); *Petro v. Employment Division,* 32 Or App 17, 573 P2d 1250 (1978). By an express credibility determination,

---

claimed. We only note that this fact should have suggested the need for a particularly scrupulous inquiry for the period after she acquired this knowledge.

We also do not express any opinion as to whether the absence of knowledge of the need to seek full-time employment would preclude the denial of benefits for the period for which such knowledge was absent. *Cf. Dennis v. Employment Div.,* 77 Or App 633, 638 n 4, 713 P2d 1079 (1986) (citing *Frank v. Employment Division,* 57 Or App 646, 646 P2d 70 (1982)).

[11] ORS 183.415(10) provides:

"The officer presiding at the hearing shall insure that the record developed at the hearing shows a full and fair inquiry into the facts necessary for consideration of all issues properly before the presiding officer in the case."

This statute is not applicable to the Employment Division and the EAB, ORS 183.315(3), but it furnishes a statutory basis for resolving issues addressed in cases such as *Berwick v. AFSD,* 74 Or App 460, 703 P2d 994 (1985), which was decided on facts predating the effective date of the statute. The Court of Appeals relied on *Berwick* in its decision in the case at bar.

*See* Comment, *Double Play: Oregon Court, Legislature Impose Duty of Inquiry Upon Administrative Hearings Officers,* 22 Will L Rev 355 (1986).

the court means an express finding on the claimant's credibility, together with an explanation for the finding. *See Lewis v. Employment Division, supra,* 66 Or App at 307-08. The purpose of the determination is to permit judicial review for substantial supporting evidence. *Id.* at 308.

The referee's decision must contain findings of fact and conclusions based upon those findings of fact. OAR 471-40-030(3)(d) and (e). The EAB may enter its own findings and conclusions or, as in this case, adopt the findings and conclusions of the referee. OAR 472-10-020(1)(b) and (c). Judicial review of the decision of the EAB is pursuant to ORS 183.310 to 183.550. ORS 657.282. ORS 183.482(8)(c) requires that the decision of the EAB be set aside or remanded if the reviewing court "finds that the order is not supported by substantial evidence in the record."[12]

We have refined this test somewhat where the review is of factual determinations that embody inferences. The test consists of two stages: (1) whether the basic fact or facts are supported by substantial evidence, and (2) whether a reasonable person could deduce the inferred fact from the basic facts. *See City of Portland v. Bureau of Labor and Ind.,* 298 Or 104, 118-19, 690 P2d 475 (1984); *City of Roseburg v. Roseburg City Firefighters,* 292 Or 266, 271, 639 P2d 90 (1981). In this case, the referee made a number of findings of fact that correspond to basic facts. From these findings of fact, the referee inferred that the claimant was unwilling to work full time. The question on review is, first, whether the findings of basic fact made by the referee are supported by substantial evidence. If the answer to that question is yes, the second question is whether a reasonable person could deduce from the findings of basic fact that the claimant was unwilling to work full time. If this question is also answered in the affirmative, the decision of the EAB must be upheld if it otherwise conforms to the requirements of law.

■■ Where there is evidence in the record both to make more probable and to make less probable the existence of any

---

[12] ORS 183.482(8)(c) was amended after the commencement of proceedings in this action. The amendment added the sentence "Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding." Or Laws 1985, ch 757, § 2. This change does not affect our analysis.

particular basic fact, a referee need not explain why he or she chose which evidence to believe. Similarly, if from the basic facts found by a referee one could rationally infer a further fact, a referee need not explain the rationale by which the inferred fact is reached.

■■ On the other hand, where a referee declines to find in accordance with uncontradicted evidence because it comes from a source that the referee finds to be unreliable, a referee should identify the unreliability to serve as an explanation in support of the findings of basic fact or the rationality of an inference the referee may draw from the basic facts. If the evidence is in the form of testimony that a referee does not believe because the referee finds the witness either mistaken or simply to be an untruthful person, the referee should make an express finding of that fact.

■ A similar situation occurs where an inference depends on an application of agency expertise. Unless the agency identifies this use of expertise, its rationale in arriving at the inference may not be evident to a reviewing court. *See City of Roseburg v. Roseburg City Firefighters, supra,* 292 Or at 272.

We do not express an opinion whether the referee's decision in this case would have met the substantial evidence test. Such an opinion would not be appropriate in light of our remand for the taking of additional evidence.

The decision of the Court of Appeals is affirmed; the decision of the Employment Appeals Board is reversed; the case is remanded to the EAB with instructions to remand to an Employment Division referee for the taking of additional evidence in accordance with this opinion.