In the Matter of
## D. Roger Miller R.N., License No. 00-026021,
### D. Roger MILLER, R.N.,
*Petitioner,*

*v.*

## BOARD OF NURSING,
*Respondent.*

### (89-91; CA A70008)

836 P2d 749

Judy Danelle Snyder, Portland, argued the cause for petitioner. With her on the brief was Hoevet, Snyder & Miller, P.C., Portland.

John T. Bagg, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Deits and Durham, Judges.

DURHAM, J.

## DURHAM, J.

Petitioner seeks review of an order of the Board of Nursing that revoked his license on the basis that he is likely to engage in conduct "derogatory to the standards of nursing." ORS 678.111(1)(f). We affirm.

Petitioner is a 56-year old certified registered nurse anesthetist (CRNA). He received a degree in 1969 and is licensed to practice in seven states, including Oregon. In 1982, while employed at a hospital, he began assisting at a mortuary in his spare time. In 1988, while alone in the mortuary, he photographed the genitalia and rectums of 3 male corpses. The pictures had nothing to do with his work at the mortuary or as a nurse. He had photographed corpses for sexual stimulation since the 1960s and had developed the pictures himself. He sent the film to a developer, who called the police. After an investigation, he stopped photographing corpses, moved to California and continued working as a CRNA.

The police informed the Board, which notified petitioner that it proposed to revoke his license under ORS 678.111(1)(f):

"(1)   Issuance of the license to practice nursing, whether by examination or by indorsement, of any person may be refused or the license may be revoked or suspended or the licensee may be placed on probation for a period specified by the board and subject to such condition as the board may impose or may be issued a limited license or may be reprimanded or censured by the board, for any of the following causes:

"* * * * *

"(f)   Conduct derogatory to the standards of nursing."

The Board relied on OAR 851-45-015(1)(g) to define conduct derogatory to the standards of nursing that justified revocation:

"(1)   Nurses whose behavior fails to conform to legal standard, and accepted standards of the nursing profession, or who may adversely affect the health, safety, and welfare of the public, may be found guilty of conduct derogatory to the standards of nursing. Such conduct shall include, but is not limited to, the following:

"*  *  *  *  *

"(g)   Failing to respect the dignity and rights of clients, regardless of social or economic status, personal attributes, or nature of health problems."

■      Petitioner assigns error to the Board's denial of his motion to dismiss. He asserts that he engaged in no conduct that violates any statute or rule. He also asserts that, before revoking his license, the Board must promulgate a rule that prohibits the specific conduct in which he engaged. OAR 851-45-015(1) defines as conduct derogatory to the standards of nursing those acts that "*may* adversely affect the health, safety and welfare of the public * * *." (Emphasis supplied.) The Board found that petitioner will likely invade the privacy and offend the dignity of patients. OAR 851-45-015(1)(g). It did not err when it determined that OAR 851-45-015(1)(g) applied to his specific conduct. *See Springfield Education Assn. v. School Dist.*, 290 Or 217, 235, 621 P2d 547 (1980).

■      Petitioner assigns error to the Board's findings. He argues that he was examined by Dr. Boverman, a psychiatrist, and that Boverman furnished "uncontested evidence" that petitioner does not pose a danger to the community or his patients, is not predatory and, generally, should not lose his license. The Board agreed with many but not all of Boverman's findings and rejected his ultimate opinion supporting petitioner. The argument does not claim a lack of substantial evidence in the record to support the Board's findings. The Board is not required to accept an expert witness' conclusions or opinions. Petitioner does not identify any Board finding that he asserts lacks sufficient support.

■      Petitioner also argues that the Board did not adequately explain how the findings of "basic" fact lead to the findings of ultimate fact. He argues that the Board failed to explain how it found that he is likely to invade the privacy and offend the dignity of patients.

In *Dennis v. Employment Div.*, 302 Or 160, 169, 728 P2d 12 (1986), the court distinguished between basic facts and ultimate facts in the context of judicial review of administrative proceedings. *See* ORS 183.482(8)(c);[1] ORS

---

[1] ORS 183.482(8)(c) provides:

183.470(2);[2] *see also City of Roseburg v. Roseburg City Fire-fighters*, 292 Or 266, 271, 639 P2d 90 (1981). In *Dennis*, the Employment Appeals Board had denied the claimant unemployment benefits after finding that she was unwilling to work full time. The court held that the referee had failed to make a basic finding of credibility that was necessary for it to review the ultimate finding that she was unwilling to work full time. 302 Or at 170. The court said:

> "ORS 183.482(8)(c) requires that the decision of the EAB be set aside or remanded if the reviewing court 'finds that the order is not supported by substantial evidence in the record.'
>
> "We have refined this test somewhat where the review is of factual determinations that embody inferences. The test consists of two stages: (1) whether the basic fact or facts are supported by substantial evidence, and (2) whether a reasonable person could deduce the inferred fact from the basic facts. In this case, the referee made a number of findings of fact that correspond to basic facts. From these findings of fact, the referee inferred that the claimant was unwilling to work full time. The question on review is, first, whether the findings of basic fact made by the referee are supported by substantial evidence. If the answer to that question is yes, the second question is whether a reasonable person could deduce from the findings of basic fact that the claimant was unwilling to work full time. If this question is also answered in the affirmative, the decision of the EAB must be upheld if it otherwise conforms to the requirements of the law." 302 Or at 169. (Citations and footnote omitted.)

■ We will uphold the Board's findings if a reasonable person could deduce from the basic facts the ultimate fact that petitioner will likely invade the privacy and offend the

---

"The court shall set aside or remand the order if it finds that the order is not supported by substantial evidence in the record. Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding."

The last sentence was added after the commencement of proceedings in *Dennis v. Employment Div., supra*, but the addition did not affect the court's analysis. 302 Or at 169 n 12.

2 ORS 183.470(2) provides that in contested cases:

"A final order shall be accompanied by findings of fact and conclusions of law. The findings of fact shall consist of a concise statement of the underlying facts supporting the findings as to each contested issue of fact and as to each ultimate fact required to support the agency's order."

dignity of patients. In some cases, an obvious rational nexus may exist between basic facts and ultimate facts. In others, such as here, we cannot figure out what rationale the Board followed. The order must state the basis of the Board's inference. *See City of Roseburg v. Roseburg City Firefighters, supra,* 292 Or at 272.

We summarize the basic facts found by the Board. Since adolescence, petitioner has suffered from an obsessive-compulsive disorder and a personality and sexual disorder manifesting itself in a preoccupation with dead bodies and paraphilia (sexual practices that are socially prohibited). He has avoided an ordinary sexual life and uses his professional occupation to ease the "pain" of his disorder. Photographing cadavers helps him to reassure himself of his own "liveliness." He actively manifested his disorder at least through 1988. As a nurse anesthetist, he regularly sees patients entirely undressed and lifeless-like. He needs psychotherapy, in part to assure his ability to control his obsessive-compulsive disorder and preoccupation with dead or lifeless-like bodies. His psychiatric disorder is not being treated currently. The Board found that petitioner is less than candid, somewhat evasive and uses congeniality as a means of avoiding uncomfortable truths. The Board concluded, in part:

"This significant and chronic disorder places patients within his care at risk for invasion of their privacy and dignity to become potential objects of Licensee's abnormal, sexual needs."

The Board could reasonably deduce from the facts that it found that petitioner will likely invade the privacy and offend the dignity of patients, due to his untreated psychiatric disorder, and it adequately stated its rationale for that conclusion in the order.

■ Petitioner also argues that the Board exceeded its statutory authority when it promulgated OAR 851-45-015. *See* ORS 183.400(4)(b). The legislature authorized the Board to adopt rules that define conduct derogatory to the standards of nursing, ORS 678.150(10) and ORS 678.150(7)(h), and the Board has. *See Megdal v. Board of Dental Examiners,* 288 Or 293, 316, 605 P2d 273 (1980). We review the rule to determine whether it corresponds to the statutory policy. *See Planned Parenthood Assn. v. Dept. of Human Res.,* 297 Or

562, 573, 687 P2d 785 (1984); *Morgan v. Stimson Lumber Company*, 288 Or 595, 604, 607 P2d 150 (1980).

Petitioner contends only that the rule exceeds the Board's authority, because the legislature did not intend to regulate nurses' private sexual preferences. However, the rule does not regulate private sexual preferences. The rule is clearly within the Board's authority to further specify the statutory standard of "conduct derogatory to the standards of nursing." *See Megdal v. Board of Dental Examiners, supra*, 288 Or at 313.

■ Petitioner also argues that ORS 678.111 and OAR 851-45-015 infringes on his right to free speech under Article I, section 8, of the Oregon Constitution and the First Amendment. The statute and the rule permissibly address the incompatibility between his function as a licensed nurse and his mental condition and behavior. *See In re Lasswell*, 296 Or 121, 125, 673 P2d 855 (1983).

Affirmed.