Argued and submitted November 22, 2006, affirmed April 4, 2007

HOME BUILDERS ASSOCIATION
OF LANE COUNTY,
an Oregon non-profit corporation
and Home Builders Construction Company,
an Oregon corporation,
*Petitioners-Appellants,*

*v.*

CITY OF SPRINGFIELD,
a municipal corporation,
*Respondent,*

*and*

METROPOLITAN WASTEWATER
MANAGEMENT COMMISSION,
*Intervenor-Respondent.*

Lane County Circuit Court
16-04-15534; A129475 (Control)

HOME BUILDERS ASSOCIATION
OF LANE COUNTY,
an Oregon non-profit corporation
and Home Builders Construction Company,
an Oregon corporation,
*Petitioners-Appellants,*

*v.*

CITY OF EUGENE,
a municipal corporation,
*Respondent,*

*and*

METROPOLITAN WASTEWATER
MANAGEMENT COMMISSION,
*Intervenor-Respondent.*

Lane County Circuit Court
16-04-15996; A129476

156 P3d 167

Andrew H. Stamp argued the cause and filed the briefs for appellants.

David Jewett argued the cause for respondents. With him on the joint brief were Thorp, Purdy, Jewett, Urness & Wilkinson, P.C., and Jerome S. Lidz and Harrang, Long, Gary, Rudnick, P.C., and Meg E. Kieran and Harold Leahy & Kieran.

Before Edmonds, Presiding Judge, and Brewer, Chief Judge,* and Wollheim, Judge.

EDMONDS, P. J.

* Brewer, C. J., *vice* Linder, J.

**EDMONDS, P. J.**

This case involves challenges by petitioners Home Builders Association of Lane County and Home Builders Construction Company to the legality of the methodology for imposing system development charges (SDCs) adopted pursuant to ORS chapter 223. The methodology in issue was formulated by the Metropolitan Wastewater Management Commission (MWMC) and formally adopted through resolutions by the City of Springfield and the City of Eugene. It is intended to operate as the framework to fund improvements and expansions to wastewater treatment facilities. After the cities adopted the methodology, petitioners sought review by the circuit court under ORS 34.040. The trial court rejected petitioners' challenges, and they appeal.

On appeal, petitioners make five assignments of error, four of which purport to frame issues regarding statutory interpretation. In their fifth assignment of error, petitioners assert that the trial court erred in its application of the substantial evidence standard of review. We agree with the trial court that substantial evidence exists in the record as a whole to support the findings in the cities' resolutions; we thus reject the fifth assignment of error. There are also issues raised in portions of petitioners' other assignments of error that we reject without further discussion because any discussion would not benefit the bench or the bar. We therefore turn to the remaining issues.

■ In general, ORS 223.297 to 223.314 govern assessments for local improvements and the establishment of methodologies for such assessments. The statutes are part of a comprehensive scheme in ORS chapter 223 designed to facilitate the financing of local improvements. One of those statutes, ORS 223.302(3)(a), provides the exclusive means to challenge methodologies for system development charges.[1] That challenge is through administrative review followed by

---

[1] ORS 223.302(3)(a) provides:

"A local government must advise a person who makes a written objection to the calculation of a system development charge of the right to petition for review pursuant to ORS 34.010 to 34.100."

judicial review under the writ of review process set out in ORS 34.040:

"(1)   The writ shall be allowed in all cases in which a substantial interest of a plaintiff has been injured and an inferior court including an officer or tribunal other than an agency as defined in ORS 183.310(1) in the exercise of judicial or quasi-judicial functions appears to have:

"(a)   Exceeded its jurisdiction;

"(b)   Failed to follow the procedure applicable to the matter before it;

"(c)   Made a finding or order not supported by substantial evidence in the whole record;

"(d)   Improperly construed the applicable law; or

"(e)   Rendered a decision that is unconstitutional."

In light of the above statutes, we turn to petitioners' assignments of error, and in particular to their fourth assignment of error, which, in our view, presents a threshold question. According to petitioners, the trial court erred because, "[a]lthough [p]etitioners presented both legal issues and substantial evidence questions to the trial court, the judge viewed all of the issues * * * as 'substantial evidence questions.'" The cities respond that petitioners are now trying to recast what they originally characterized as questions of fact into questions of law and that the trial court properly exercised its review function under ORS 34.040(1)(c) to review petitioners' challenges for substantial evidence.

The trial court observed that the parties differed over the characterization of the cities' determinations on review as quasi-judicial or quasi-legislative. Petitioners argued below, and they repeat the argument here, that the determinations were quasi-judicial in nature and, therefore, the court owed little deference to the local governments on review. In response, the cities argued that the decisions were quasi-legislative in nature, citing *Homebuilders Assn. v. Tualatin Hills Park & Rec.*, 185 Or App 729, 738, 62 P3d 404 (2003), and, therefore, the cities' determinations were owed a high degree of deference. The trial court agreed with the cities that the decisions were properly characterized as

quasi-legislative, but it concluded nonetheless that ORS 34.040(1)(c) was the governing standard of review.

ORS 34.040(1)(c) does not on its face differentiate between whether decisions are quasi-judicial or quasi-legislative in nature for purposes of substantial evidence review. Accordingly, we decline to read a requirement into the statute that has not been expressly imposed by the legislature. ORS 174.010.[2] We turn then to the core of the issue: whether petitioners' challenges were properly reviewed by the trial court for substantial evidence or whether the trial court should have considered the issues raised by petitioners as legal issues concerning statutory construction.

According to petitioners, their second and third assignments of error frame questions of statutory interpretation. For example, in their second assignment, petitioners raise the issue "whether the local government could, when adopting an SDC methodology * * * rely on population projections that differ from the officially adopted population projections contained in the Comprehensive Plan." According to petitioners, "[t]hat's a much different question from asking whether the selected population projection is supported by substantial evidence." Petitioners also identify what they contend is a second issue of law under the second assignment, contending that the methodology improperly considered certain data as indicative of population figures. Similarly, in petitioners' view, the third assignment of error presents "multiple statutory interpretation questions which the trial court erroneously considered to be evidentiary issues[,]" such as the question of changing the method of calculating dry season effluent capacity. Other issues raised by petitioners and characterized as issues of statutory interpretation include whether the methodology is flawed by including population growth twice in the projected need for capacity, whether the methodology over-projects the need for capacity during the 20-year planning period, whether the

---

[2] ORS 174.010 provides, in part:

"In the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted[.]"

average per capita flow rate and peaking factor determinations made by the cities are accurate, whether capacity demand data was accurate, and whether the assessment of the capacity or performance of existing facilities was flawed.

The governing statute is ORS 223.304. It provides, in part:

"(1)(a)    Reimbursement fees must be established or modified by ordinance or resolution setting forth a methodology that is, when applicable, based on:

"(A)    Ratemaking principles employed to finance publicly owned capital improvements;

"(B)    Prior contributions by existing users;

"(C)    Gifts or grants from federal or state government or private persons;

"(D)    The value of unused capacity available to future system users or the cost of the existing facilities; and

"(E)    Other relevant factors identified by the local government imposing the fee.

"(b)    The methodology for establishing or modifying a reimbursement fee must:

"(A)    Promote the objective of future system users contributing no more than an equitable share to the cost of existing facilities.

"(B)    Be available for public inspection.

"(2)    Improvement fees must:

"(a)    Be established or modified by ordinance or resolution setting forth a methodology that is available for public inspection and demonstrates consideration of:

"(A)    The projected cost of the capital improvements identified in the plan and list adopted pursuant to ORS 223.309 that are needed to increase the capacity of the systems to which the fee is related; and

"(B)    The need for increased capacity in the system to which the fee is related that will be required to serve the demands placed on the system by future users.

"(b) Be calculated to obtain the cost of capital improvements for the projected need for available system capacity for future users."

Initially, we observe that no provision in the text of ORS 223.304 requires that the methodology adopted pursuant to the statute incorporate and apply specific data contained in the Comprehensive Plan, such as population projections.[3] In other words, petitioners seek to infuse a statutory requirement into ORS 223.304 that does not appear in its text. Moreover, the remaining issues raised by petitioners appear to concern disagreements with the underlying data that were used in developing the methodology; petitioners would have preferred that different data be used. In that light, the following explanation in *Dennis v. Employment Div.*, 302 Or 160, 169-70, 728 P2d 12 (1986), confirms that a substantial evidence test is the proper test to apply to the issues framed by petitioners.

"The test consists of two stages: (1) whether the basic fact or facts are supported by substantial evidence, and (2) whether a reasonable person could deduce the inferred fact from the basic facts. *See City of Portland v. Bureau of Labor and Ind.*, 298 Or 104, 118-19, 690 P2d 475 (1984); *City of Roseburg v. Roseburg City Firefighters*, 292 Or 266, 271, 639 P2d 90 (1981). * * * The question on review is, first, whether the findings of basic fact made by the referee are supported by substantial evidence. If the answer to that question is yes, the second question is whether a reasonable person could deduce from the findings of basic fact that the claimant was unwilling to work full time. If this question is also answered in the affirmative, the decision * * * must be upheld if it otherwise conforms to the requirements of law."

The above issues, as framed by petitioners, do not present issues of statutory interpretation because they do not raise questions of legislative intent regarding the meaning of ORS 223.304(1) and (2). Rather, the statutes inform the reader what a methodology for the assessment of improvement fees must be based on. In contrast, the issues framed by petitioners pertain to the basic facts, and the inferences that

---

[3] That is not to say that a local government need not comply with the land use planning requirements of the Comprehensive Plan.

can be drawn from those facts, that may be included in a calculus for formulating a proper methodology for assessment. Although, as stated above, petitioners disagree with some of the factors relied on by the cities that form the basis for the methodology, and with the inferences of relevance that the cities drew from those factors, those kinds of determinations, according to the record, are used by experts in the field to formulate methodologies for assessing SDCs. Because those factors are factual in nature in the sense described in *Dennis* and are therefore properly subject to review for substantial evidence, it follows that the trial court did not err in exercising its review authority under ORS 34.040(1)(c). For similar reasons, we reject petitioners' other arguments under their second and third assignments of error.

■     We turn now to petitioners' first assignment of error, which, in substance, asserts that the cities' methodology is legally deficient under ORS 223.304(1) and (2) because it "does not address the factual issues required by [the statutes], but rather sets forth a 'method' under which legislative facts can [better] be determined in separate, undetermined proceeding[s] using an unspecified process and subject to unspecified judicial review mechanisms." As we understand petitioners' argument, it is aimed at the fact that the cities' methodology does not contain the data and information necessary to arrive at a base per-unit charge, does not refer to specific projects, and defers actual assessments to a later proceeding. However, again, our review of the above-quoted provisions does not reveal any requirement that the methodology include what petitioners contend it must contain. Indeed, subsection (2) of the statute requires only "consideration" of the enumerated factors and speaks in terms of "the projected need for available system capacity for future users." In other words, we would have to add words to the existing statute in order to make it say what petitioners contend it was intended to say. Consistently with ORS 174.010, we lack authority to make the insertions in the statute that petitioners request; their arguments must be addressed to the legislature if they wish the requirements of the statute to be changed.

Affirmed.